Elliot Wayne WHITE,
Petitioner-Appellee,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellant.

No. 77–1115.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1978.

Rehearing and Rehearing En Banc
Denied Feb. 15, 1978.

John L. Hill, Atty. Gen., Austin, Tex., Romaner J. Strong, Jr., David M. Kendall, Jr., Joe B. Dibrell, Asst. Attys. Gen., Houston, Tex., John Pierce Griffin, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Paul Womack, San Antonio, Tex., Andrew W. Carruthers, Houston, Tex., for petitioner-appellee.

Before THORNBERRY, GOLDBERG and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

In November of 1972 petitioner-appellee, Elliot Wayne White, was charged by a Harris County Grand Jury with the theft of an automobile. Before action could be taken on that indictment, White was charged separately with the theft of some tools. Confusion between those two cases occasions this appellate review. White was convicted in the automobile case. On direct appeal to the Texas Court of Criminal Appeals he argued that he had been denied effective assistance of counsel because his attorney had justifiably believed that the tool case, rather than the automobile case was to be tried. The Texas Court of Criminal Appeals rejected that argument on the basis that his counsel's oral motion for continuance did not meet Texas procedural standards, which require such a motion to be written and sworn.[1]

White then brought a habeas action in federal district court. In that habeas action, the state argued primarily that White had engaged in chicanery to gain a nine month delay and that any lack of preparation on the part of counsel was White's own fault. White argued that his counsel had "learned about the case as he tried it" and that the lack of preparation was due to the state's action in leading counsel to believe that the tool case rather than the auto case would be tried. The district court granted White habeas relief on ineffective assistance grounds and the state appealed.

Both parties have consistently characterized the problem in this case as one of ineffective assistance of counsel. For the

---

1. The Texas Rules of Criminal Procedure clearly set out requirements that a motion for continuance must be both written and sworn. Recent Supreme Court rulings indicate that a habeas petitioner must show both "cause" for failure to follow a state procedural rule and "prejudice" resulting to him from that state procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). On the facts of this case we find that White has met those requirements. We assume that the state has a strong interest in requiring motions for continuance to be written and sworn in the normal course of events. Such requirements may tend to eliminate frivolous motions made solely as delaying tactics. That assumption is inapplicable in a case such as White's in which the action of the state court itself made necessary the procedural default that occurred.

reasons set out below, we affirm the district court's grant of habeas relief because the peculiar sequence of events that lead to his trial on the "wrong" case amounted to a violation of the Due Process Clause of the Fourteenth Amendment. Because of our resolution of the case we need not address White's complaints about improper prosecutorial argument.

Between December 1972, when the two indictments were returned, and August 1973, when the automobile case was tried, White had four different attorneys. He retained the first two, each of whom withdrew from the case. The state alleges that the attorneys withdrew because White failed to keep appointments with them. White argues, and the district court found, that he failed to keep those appointments because he could not possibly pay the attorneys and he knew that they would not do any investigation until he did. On appeal we are bound by that finding unless it is clearly erroneous. *Jones v. Wainwright*, 406 F.2d 1241 (5 Cir. 1969). In June of 1973 the court found that White was a pauper and appointed counsel to represent him. On August 1, that appointed counsel came to see White, who was by that time in jail, and told him that the tool case was going to trial on August 13. He advised White to plead guilty. White refused. He then convinced his wife to come up with the money to employ a fourth attorney, Charles Szekely.

The date of Szekely's employment is a matter of some dispute. The state urges that the docket sheet reflects that Szekely was employed in the automobile case on August 2, 1976 and that he thus had over ten days to prepare for trial. Both White and Szekely argue that the entry is erroneous and the district court so found. That court accepted White's argument that on August 2 he employed Szekely in the tool case only. We think that finding is not clear error. *See Jones v. Wainwright, supra*. White apparently believed that the tool case was coming up, that he could not pay Szekely for both cases, and was, therefore, attempting to cross each bridge as he

came to it. On August 13, Szekely attended docket call with White in the tool case and for the first time discovered that the second case, involving the automobile, was also pending against White. Szekely left the courthouse on August 13 prepared to try the tool case and to provide later representation to White in the auto case. On August 15 when he was called to trial he entered the courtroom to find that it was the automobile case. He moved for continuance, arguing his recent employment. The visiting trial judge denied the motion and instructed his clerk to enter in the record that Szekely had been employed on August 2.

The district court's fact finding in regard to the August 13 docket call is of some importance because it bears on the source of Szekely's belief that the tool case would be called and on whether or not that belief was justified. The district court found that:

> On August 13, (a Monday) petitioner's cases were called . . .. Both Szekely and Stanley stood up to answer for petitioner. Szekely learned for the first time that the auto theft charge was pending against petitioner. After talking to petitioner, Szekely agreed to represent him in that case as well and Stanley was allowed to withdraw from both cases. The court denied the motion for continuance in the tool case. The court issued a bench warrant for the defense's main witness in that case, who was in prison. Counsel were instructed to hold themselves ready for trial.

The docket sheets indicate that the two cases had continually been carried together and had received identical treatment prior to August 13. The district court's finding demonstrates that all of the significant actions at the August 13 docket call had reference to the tool case rather than the automobile case. We have no doubt that the actions of the court at the docket call, in overruling motions related to the tool case and summoning witnesses for it, justifiably led Szekely to think that he was standing ready for trial in the case with

which the court had dealt in the docket call—the tool case. Further the fact that court-appointed counsel appeared at the docket call and that his withdrawal from the case was subject to judicial approval mean that the docket call judge had reason to know of Szekely's just-completed entry into the automobile case.

When Szekely appeared in court on August 15, things were otherwise. White's case had been assigned to a visiting judge, who, of course, knew nothing of the August 13 events. Through some confusion, the automobile case was called. When the trial judge called for the trial to begin, Szekely protested his recent employment. The visiting judge, who had no way to discern what had transpired saw only two cases that had received identical treatment.[2] He then ordered the clerk to enter into the record that Szekely had been employed on August 2. Although this entry was made in good faith, it was erroneous.

■ Both the defendant and the State of Texas characterize this case as one of ineffective assistance of counsel. A prerequisite for such a claim involving retained counsel is that some responsible state official connected with the criminal proceedings who could have remedied the conduct failed in his duty to accord justice to the accused. *Fitzgerald v. Estelle*, 505 F.2d 1334 (5 Cir. 1975). As the court said in *Fitzgerald*:

> Therefore, if the trial judge . . . can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied.

We are reluctant to apply that standard to this case for several reasons. First it would require us to cast blame on the visiting trial judge. We think that would be difficult to do in this case. The information that he

had led him to believe reasonably that Szekely had been employed on August 2. He thought that counsel had had over ten days to prepare. It cannot, therefore, be said that the trial court knew that the defendant was receiving incompetent representation. We are also unwilling to cast this opinion in the ineffective counsel mold because we feel that White's counsel was not blameworthy. Our primary reason for refusing to categorize this case as one of ineffective counsel stems, however, from the fact that it is only with hindsight that the prejudice to petitioner becomes apparent. To engraft a case turning on hindsight into our ineffective counsel cases, would, we feel, lead to future problems.

■ Nor does this case fall neatly into a pigeon hole labelled "trial-court's-abuse-of-discretion-in-failing-to-grant-a-continuance."[3] *See Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1969); *United States v. Uptain*, 531 F.2d 1281 (5 Cir. 1976). In the cases involving abuse of discretion, however, we find our starting point for analyzing this problem. First we note that the approach to cases involving abuse of discretion in failure to grant a continuance are subject to no mechanical resolution, *Ungar, supra*, and depend for their answer on the circumstances present in every case, *Uptain, supra*. We also note that other circuits have, in deciding whether a denial of a motion for continuance amounted to a Due Process denial, considered both abuse of discretion and whether manifest injustice would result if the trial continued. *Cf. United States v. Collins*, 435 F.2d 698 (7 Cir. 1970).

■ We adopt a similar rationale in this case. Viewing White's prosecution under a totality of circumstances theory, we find on the one hand an attorney who justifiably relied on the actions of a court at docket call which lead him to believe that he would

---

2. Szekely's motion for continuance may have played some part in the confusion. His oral motion mentioned both his recent employment and the fact that he had been out of town for ten days. The latter fact, of course, would have been no excuse since an attorney could

not bolster a claim of lack of preparation by simply absenting himself.

3. We recognize, of course, that we may review a state court's refusal to grant a continuance only to determine whether that failure amounted to a denial of due process.

try a case involving the theft of some tools and on the other hand a visiting judge who, despite the attorney's attempt to convince him otherwise, in good faith believed that the attorney had had the case for ten days and was making a garden variety motion for continuance. We hold that on the facts and circumstances of this case, the continuation of White's trial resulted in manifest injustice because of his attorney's justifiable reliance on court actions which led him to believe that a wholly different case would be tried. The judgment of the district court is AFFIRMED.

CHARLES CLARK, Circuit Judge, concurring specially.

I concur in affirming the grant of habeas corpus because the trial court finding that the prosecutor's promise in argument to talk later with the jury about White's prior conviction for attempted murder and prosecutor's repeated argument references to matters outside the record deprived the trial of fundamental fairness is not clearly erroneous. I cannot concur in predicating habeas corpus relief on the trial court's denial of White's motion for continuance.

Set out below is the entire transcript of what occurred between lawyer Szekely and the state trial judge who refused to continue the case:

MR. SZEKELY: This is No. 186,106, entitled the State of Texas vs. Elliott Wayne White, in the Criminal District Court of Harris County, Texas, 178th District Court Annex A. This is a defense motion for continuation.

Comes now Elliott Wayne White, the Defendant in the above and numbered cause, together with his attorney of record, Charles S. Szekely, Jr., and makes this motion for continuation and would request and pray to the Court—to this Honorable Court that it go from its present trial setting of the 15th day of August, 1973. In support of this motion, the Defendant and his attorney of record, would show the Court that it was not until the 2nd day of August, 1973, that the Defendant through his wife and friends, retained their present counsel of record, Charles Szekely. That prior to this time, the Defendant had a Court-appointed lawyer. The Defendant was not satisfied with his lawyer and the representation he was receiving. And with the help of his relatives and friends, he was able to raise enough money to retain the services of his present counsel. At that time, his present lawyer, Charles Szekely, was only aware of one cause pending against the Defendant, that being Cause No. 187,503, also for the offense of felony theft. On the 3rd day of August, 1973, after having spoken with the Assistant District Attorney who was then representing the State in this cause, Burt Graham, the Defendant's attorney of record filed a motion for continuation requesting that the case be continued from its present trial setting or from its then trial setting of the 13th of August, 1973. It was only until that date that the Defendant's present counsel learned of the case now pending against him, the auto theft case, which is the instant cause. For this reason, the Defendant orally moves to the Court to continue this cause from its present trial setting until such time as the Defendant has had adequate time to prepare his defense in this cause. The Defendant's counsel of record, Charles Szekely, would also offer to the Court that he has been on vacation since the afternoon of the 3rd day of August until the evening of the 11th day of August, during which time he has not had time to prepare any defense in this cause or the other cause. Wherefore premises considered, the Defendant prays that this Honorable Court continue this cause from its present trial setting of the 15th day of August, 1973 and for such other and further relief which he shows himself justly entitled. Respectfully submitted, Charles Szekely, Attorney for the Defendant.

THE COURT: Anything you want to say before I start talking?

MR. YOUNG: No, Your Honor.

THE COURT: You have had the period the law allows. The motion is denied. Take your exception.

MR. SZEKELY: Please note my exception.

THE COURT: You had more than 10 days. It is up to you. Nobody has to serve it for you that I know of. The motion to quash is denied.

The judge could have concluded that Szekely's comment about the date he first learned of the case pending against his client was ambiguous. "That date" could have referred to the August 3 conversation with Assistant Attorney Graham or to the trial setting date of August 13. Two subsequent statements clearly resolved this possible ambiguity. First, another ground urged by Szekely was that he had been on vacation from August 3 to August 11 which had prevented the preparation of White's defenses in both cases. Obviously, such a ground would have been wholly irrelevant to the subject auto theft case if Szekely was urging that his first knowledge of the auto theft case came on August 13. Second, in ruling on Szekely's motion, the court stated, "You had more than 10 days. It is up to you." And Szekely never advised the court that this impression was incorrect. Only Szekely's habeas corpus testimony as to his present recall of his past subjective state of mind supports habeas relief based on the failure to grant a continuance. This testimony is at odds with every bit of documentary record. It is also contradicted by the fact that those records do not contain any statement or even implication that he was misled as to which of the two parallel cases would be set for trial. (The August 13 docket entry in both cases is identical: "Hold for trial.")

Given the strong presumption of regularity which attends court proceedings, the entire record compels me to the conclusion that the federal habeas court was clearly erroneous in its factual conclusions that White or Szekely were misled or were the victims of administrative mistake or confusion. If Szekely was forced to try White's case without adequate time to investigate and prepare, this condition was never made known to or participated in by the trial court.