**Edward CLAYTON, Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, Respondent-Appellee.**

**No. 78–1164**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Aug. 10, 1978.

M. H. Gertler, New Orleans, La., for petitioner-appellant.

Wm. J. Guste, Jr., Atty. Gen., Baton Rouge, La., Harry F. Connick, Dist. Atty.,

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Wm. L. Brockman, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

For the reasons stated in the opinion of the court below, published as an Appendix hereto, its judgment is

AFFIRMED.

## APPENDIX

### EDWARD CLAYTON

v.

### ROSS MAGGIO, ET AL

Civ. A. No. 77–1334.

United States District Court,
E. D. Louisiana.

Oct. 27, 1977.

ALVIN B. RUBIN, Circuit Judge: **

Having exhausted his state remedies, the state prisoner in this habeas proceeding seeks a hearing in federal court as to whether the state judge who took his guilty plea afforded him his full rights under *Boykin v. Alabama*, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. The petitioner's application for relief was denied after a full and fair hearing in state court on the same issue. Accordingly, his requests for a further hearing and for relief under 28 U.S.C. § 2254 are denied.

The petitioner was arraigned on August 1, 1970 in the Criminal District Court for the Parish of Orleans on a charge of armed robbery. He then entered a plea of not guilty, but on September 21, 1970, withdrew his original plea and substituted a plea of guilty before Judge Israel M. Augustine, Jr.

** Sitting as District Judge by designation of Chief Judge John R. Brown.

1. "BY MR. KAISER [the court reporter]: . . . as long as I have been here and as long as men

The petitioner was subsequently sentenced to ten years' confinement.

The petitioner first raised his *Boykin* claim in an application for a writ of habeas corpus filed on November 30, 1976 in the Criminal District Court. After an evidentiary hearing on February 1 and 2, 1977, Judge Augustine denied the petitioner's application. The Louisiana Supreme Court upheld the denial on March 18, 1977.

The petitioner then sought federal relief under § 2254 in an application filed on April 27, 1977. After reviewing the state record, United States Magistrate Kenneth C. Hughes recommended on September 2, 1977 that a writ of habeas corpus be granted and that this court hold an evidentiary hearing to assess the credibility of those who testified at the petitioner's state hearing. The reason why the recommendation was made is not clear: The magistrate states he is acting "out of an abundance of caution," but advances no reason why he has concluded that the hearing in state court was not full and fair.

I have therefore reviewed the record independently. It does not appear that a genuine issue of credibility exists in this case. Three persons testified at the petitioner's state hearing—the petitioner, the attorney who represented him when he pleaded guilty, and the court reporter at the guilty plea hearing; the only other person who could have testified, Judge Augustine, made a statement on the record. The witnesses did not contradict one another.

The court reporter testified that, after a thorough search of his office, of the court, and of his home, he could not find his notes from the September 21, 1970 hearing. He further testified that he had no specific recollection of the petitioner's case, but that he did not remember any guilty plea hearing before Judge Augustine in which a defendant was not "Boykinized." [1]

have pled guilty in this section, I can't ever recall of them (sic) not being Boykinized by you. As a matter of fact I got a little bit irritated because you got so damn long with it on these pleas but as far as I can remember, I

The petitioner testified that he did not remember having been advised by the court in 1970 of his rights to appeal or to confront witnesses. When pressed by his own lawyer, the petitioner stated affirmatively that he was not advised of his rights. However, when the court asked, "I am asking you what did I tell you?" the petitioner responded, "When I came in here—Judge, I really can't remember." Transcript, *Louisiana v. Clayton*, Cr.No. 215–797, La.Cr.Dist.Ct., Feb. 2, 1977, 6 [hereinafter cited as Transcript].

The attorney employed by the Indigent Defender Program in Orleans Parish who represented the petitioner in 1970 then testified that he had no specific recollection of the case, but that he could not remember any instance in which a defendant pleaded guilty before Judge Augustine and was not advised by the court of his rights as required by *Boykin*.

Finally, the Judge offered his statement for the record, saying that he had no specific recollection of the petitioner's case, but that the court's policy "even prior to the decision" in *Boykin* has been in all cases to advise defendants who wish to plead guilty of all their rights. Transcript, Feb. 2, 1977, p. 14.

At the conclusion of the state hearing, Judge Augustine denied the petitioner's application without specifying his reasons. However, he appears to have made no finding that the petitioner was lying with respect to what occurred when he entered his guilty plea. The petitioner seems to have testified honestly that he does not remember those events.

Similarly, no genuine issue of credibility exists with respect to those who testified on behalf of the state. While a statement by the judge as to his customary policy might be seen as evidence of bias if uncorroborated by the record and offered in the face of contrary evidence, the testimony both of the petitioner's lawyer and of the court reporter verified the judge's statement.

The issue is thus not one of credibility, but rather whether the petitioner carried his burden of demonstrating to the court facts that establish a constitutional violation. *Howard v. Maggio*, 5th Cir. 1976, 540 F.2d 1280, 1282; *Labat v. Bennett*, 5th Cir. 1966, 365 F.2d 698, 711–712, cert. denied, 1967, 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334. The state court's apparent conclusion that the petitioner failed to meet this burden is not clearly erroneous on the face of the record.

Petitions for habeas corpus may be adjudicated on the record of testimony at the state hearing alone if that record demonstrates that the habeas applicant enjoyed a "full and fair hearing" under the standards announced in *Townsend v. Sain*, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; *Gotcher v. Beto*, 5th Cir. 1971, 444 F.2d 696. The state hearing in this case met the appropriate standard. There seems to be no relevant fact that was not before the state court. The petitioner has shown no bias or procedural error to cast doubt on the reliability of the state court's determination.

The United States Magistrate, in reviewing the record, was troubled by the hearing judge's possible reliance on his own statement in denying the petitioner's application. It is not unfair practice, however, in the state or in the federal system for the judge who presides over a trial or a guilty plea hearing to hear post-conviction motions as well. It would be blinking reality to suggest that a judge's memory in such cases plays no role in evaluating the evidence before him. In making his statement, Judge Augustine set forth his recollections for the record. His statement evidences no bias; it constitutes a candid admission that he lacks any specific recollection of the petitioner's 1970 hearing. Certainly, he did not attempt in his statement to cast any direct doubt on the credibility of the petitioner's testimony.

can't think if (sic) any man that wasn't Boykinized in this court." Transcript, *Louisiana v.*

*Clayton*, Cr.No. 215–797, La.Cr.Dist.Ct., Feb. 1, 1977, 3.

It is troubling, of course, that the state in this case misplaced or lost the petitioner's guilty plea transcript notes. The purpose of *Boykin* hearings, besides protecting defendants, is to help assure the finality of state court convictions in order to avoid collateral hearings in which memories become hazy and the evidence uncertain. Where no transcript is made or available of a guilty plea hearing, that purpose is obviously frustrated. See *Blackledge v. Allison*, 1977, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136.

However, it is still the petitioner's burden in a habeas proceeding to demonstrate, at least prima facie, those facts that establish a constitutional violation. In deciding whether the petitioner's testimony alone meets that burden, and whether the state violated its duty in not making a transcript available, all of the facts must be considered, including any delay by the petitioner in seeking relief and his opportunities for earlier applications.

In *Norvell v. Illinois*, 1963, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456, the Supreme Court upheld the denial of a new trial for the petitioner who alleged he had been denied a transcript of his 1941 trial for purposes of appeal. The defendant first moved for such a transcript in 1956, after the court reporter had died and left behind notes no one else could interpret. The state held a hearing, attempting to reconstruct the evidence offered in 1941, but no adequate record could be made. The Supreme Court held that, where, through no fault of the state:

. . . transcripts are no longer available, Illinois may rest on the presumption that he who had a lawyer on the trial had one who could protect his rights on appeal.

373 U.S. at 424, 83 S.Ct. at 1369. In this case, the state may have been responsible for losing the petitioner's transcript, and the time between his guilty plea and first habeas application was six years, not fifteen. However, where the petitioner himself has no specific recollection of the events surrounding his guilty plea, the state's failure after six years to find the petitioner's transcript is not so egregious a breach of duty as to relieve the petitioner of his initial burden of proof. *Cf. Gallegos v. Cox*, 10th Cir. 1966, 358 F.2d 703.

Further, the petitioner was represented by counsel at his guilty plea, and would seem to have been in a position six years ago to contest any unfairness in his subsequent conviction.

Courts should:

. . . continue to scrutinize with guarded caution those situations, such as this one where the reviewing court cannot ascertain from the trial transcript that the stringent due process requirements imposed on the states by [*Boykin*] . . . have been complied with scrupulously.

*LeBlanc v. Henderson*, 5th Cir. 1973, 478 F.2d 481. But in the absence of even the petitioner's specific recollection of his hearing and any independent evidence suggesting that he was deprived of his rights, the unavailability of a transcript six years after a guilty plea does not alone cast sufficient doubt on the fairness of that plea to warrant a further federal hearing or the granting of the requested relief.

If there are additional facts that might be adduced in an evidentiary hearing, the petitioner may file an application for reconsideration setting forth those facts and accompanied by a supporting affidavit.