James Walter CHERRY, Petitioner-Appellant,

v.

DIRECTOR, STATE BOARD OF CORRECTIONS, Respondent-Appellee.

No. 79–1525.

United States Court of Appeals, Fifth Circuit.

March 17, 1980.

Rehearing En Banc Granted April 25, 1980.

J. Michael Lamberth, Atlanta, Ga. (Court-appointed), for petitioner-appellant.

John W. Dunsmore, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before TUTTLE, VANCE and KRAVITCH, Circuit Judges.

TUTTLE, Circuit Judge:

Appellant James Cherry seeks a reversal of the judgment of the district court denying him habeas corpus relief from a 1963 conviction in the Superior Court of Fulton County, Georgia for robbery by use of an offensive weapon. We reverse the district court for the reasons set forth in this opinion.

In October 1963, Cherry was put on trial in Georgia state court on the robbery charge.[1] On the first day of trial, at 4:30 p. m., after two witnesses had already testified and a third was being examined, the trial judge was informed that the mother of one of the jurors had died.[2] After determining the veracity of the report, the judge met with counsel for both the state and the defendant and asked counsel for the defendant whether he would waive the presence of the juror and proceed with 11 jurors. Counsel for the defendant responded that he wished to continue with the 12 jurors previously selected at which point the trial judge dismissed the jury for the rest of the day.

The next day the trial judge dismissed the juror from the trial because "it would be inhuman, indecent, inappropriate, cruel and an injustice to require Mr. Royce Terry [the juror] to have been in court this morning." The judge then declared a mistrial.

At the second trial, Cherry was convicted and received a sentence of life imprisonment. On direct appeal, Cherry made several arguments for a new trial or for his release. He alleged that the second trial constituted double jeopardy but this point was overruled, apparently on the basis that the bill of exceptions was not properly perfected.[3] His other points of contention dealing with procedural matters in the second trial were denied also.

In his state habeas petition, Cherry argued only that the second trial violated his Fifth Amendment right not to be placed in double jeopardy. That petition was denied in November 1976 without an opinion.

In his federal habeas petition, Cherry argued the double jeopardy contention, as well as some of the procedural contentions he had raised on direct appeal in the state court.[4] Cherry also raised for the first time

---

1. This trial was apparently never transcribed by a court reporter. According to a response filed by the Georgia Attorney General's office in this case in May 1978, a reporter made notes at the trial but those notes have not been found.

2. The information concerning this incident comes from the trial judge's own order of mistrial unless stated otherwise.

3. "The bill of exceptions alleges that when the defendant was placed on trial on November 5, 1963, he filed a plea of autrefois acquit. The bill of exceptions recites: 'To this plea an order was entered, overruling said plea on the 5th day of November 1963, signed by William T. Boyd, Solicitor General of the Atlanta Judicial Circuit.' Hence, the ground presents no question for consideration here." 220 Ga. 695, 696, 141 S.E.2d 412, 413 (1965).

4. These arguments were as follows: First, that the trial court had erred because prospective jurors were excused because they would refuse

in federal court the issue that the state had adduced testimony from an individual who had shared a cell with him by making a deal with that individual. The failure of the state to disclose the deal, Cherry charged, was a ground for relief under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

The district court denied Cherry's petition for a writ of habeas corpus, adopting the recommendations of a magistrate. In his opinion, the magistrate concluded first, that Cherry had exhausted his state remedies as to the double jeopardy issue and that the trial judge's action in terminating the first trial was based on manifest necessity within the meaning of *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Therefore, Cherry's right not to be placed in double jeopardy had not been violated. He then concluded, as to the *Giglio* issue, that Cherry had "purposefully bypassed an available state remedy" by failing to raise it earlier and therefore the issue would not be considered. Other procedural contentions of Cherry's surrounding the second trial were also denied. This appeal ensued.

We first must determine whether the defendant exhausted his state remedies, a requirement codified at 28 U.S.C. § 2254(b), (c) (1977).[5] The doctrine dictates that a state prisoner's claim first be presented to the state court system and exhausted there.[6] One reason given for the exhaustion doctrine is that:

> it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation . . . . *Fay v. Noia,* 372 U.S. 391, 419–20, 83 S.Ct. 822, 838, 9 L.Ed.2d 837 (1963) (quoting *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950).

There have been circumstances delineated, however, when the exhaustion requirement does not apply.[7]

In *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir. 1978), this Court found that if a prisoner had not exhausted state remedies as to all claims in a petition, then the district court must dismiss the claim. However, this Court held that if "a district court erroneously reaches the merits of an exhausted claim in a mixed petition and an appeal is taken from its dispositive order, we shall review the merits of the claim." *Id.* at 362.

At the state level, Cherry appealed his conviction alleging double jeopardy and his conviction was affirmed in *Cherry v. State,* 220 Ga. 695, 141 S.E.2d 412 (1965). He again raised the double jeopardy issue in a state application for habeas which was de-

---

to consider under any circumstances, capital punishment as a possible sentence for armed robbery, in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); second, that he had been deprived of a fair trial through various acts of prosecutorial misconduct including an unsuccessful attempt by the prosecution to introduce prejudicial evidence and improper prejudicial argument by the prosecution. These arguments were considered substantively and rejected by the magistrate and by the district court.

5. Section 2254 provides, in part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be

granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

6. "For a claim to be exhausted, the state court system must have been apprised of the facts and the legal theory upon which the petitioner bases his assertion." *Galtieri v. Wainwright,* 582 F.2d 348, 353 (5th Cir. 1978).

7. Two of the exceptions are codified in 2254(b). For other exceptions, see *Galtieri v. Wainwright,* 582 F.2d 348, 354–355, especially fns. 12 and 13.

nied by both the trial court and the Georgia Supreme Court. Therefore, Cherry exhausted his state remedies as to the double jeopardy issue.

■ However, Cherry did not raise the *Giglio* issue on either direct appeal or in his state application for a writ of habeas corpus, raising it for the first time in federal district court. According to Georgia law:

All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of the State of Georgia otherwise requires, or any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. Ga.Code Ann. § 50–127(10)(1979).

We read this statute as saying that a petitioner who failed to allege a violation in his original state petition is not barred from raising it in the state court until a state court judge considers the subsequent petition and decides the matter could "reasonably have been raised" before. If the judge has not decided that, then a possible state remedy has not been completely exhausted. Since Cherry has failed to bring the *Giglio* claim before any Georgia trial judge, he has not exhausted his state remedies as required on that claim.[8]

■ Having decided, however, that Cherry has not exhausted his remedies on the *Giglio* issue, we are not foreclosed from considering his double jeopardy claim since the district court erroneously reached the merits of an exhausted claim in these mixed petitions. *Galtieri,* 582 F.2d at 362. Reaching and considering that double jeopardy claim, we find Cherry's Fifth Amendment right not "to be twice put in jeopardy of life or limb" to have been violated.

We must first consider the proper standard to be applied in ruling on the district court's order denying Cherry habeas relief. The state urges that a "clearly erroneous" standard be applied. *See White v. Estelle,* 566 F.2d 500, 502 (5th Cir. 1978). However, the appellant is correct in responding that the district court's holding is subject to a broader, more lenient standard of review. The "clearly erroneous" rule referred to in *White* applies to factual determinations made by a district court.[9] The determination before us here concerning the possible application of double jeopardy is clearly a question of law.

The legal standards to be applied in cases dealing with claims of double jeopardy have been discussed at length, both in this court and in the Supreme Court. The Fifth Amendment to the United States Constitution commands that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."[10] It is a maxim with roots deep in the history of jurisprudence.[11] As Mr. Justice Black once

8. The district court as stated earlier, in adopting the findings of the magistrate, concluded that Cherry had deliberately bypassed an available state remedy as to the *Giglio* issue. Since we conclude that he has not exhausted his state remedies, we do not consider the bypass question. *See Calhoun v. Smith,* 447 F.2d 1356 (5th Cir. 1971).

9. "White argues, and the district court found that he failed to keep those appointments because he could not possibly pay the attorneys and he knew that they would not do any investigation until he did. On appeal we are bound by that finding unless it is clearly erroneous. *Jones v. Wainwright,* 406 F.2d 1241 (5th Cir. 1969)." *White v. Estelle,* 566 F.2d at 502. *Jones* applied the "clearly erroneous" rule to the findings of fact made by the district court after an evidentiary hearing.

10. For the reasons behind the rule, *see Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957); *Note, Twice in Jeopardy,* 75 Yale L.J. 262, 277–79 (1965).

11. Blackstone called it a "universal maxim of the common law of England that no man is to be brought into jeopardy of his life, more than once, for the same offense." 4 W. BLACKSTONE, Commentaries 335.* Some judges have described the right "as important . . . as the right of trial by jury, or any other constitutional provision intended to safeguard the liberty and property of the citizen." *State v. Panchuck,* 53 N.D. 669, 207 N.W. 991, 994 (1926).

wrote in dissent, "Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization." *Bartkus v. Illinois*, 359 U.S. 121, 151, 79 S.Ct. 676, 696, 3 L.Ed.2d 684 (1958) (Black, J., dissenting).

The point where most analyses begin as to when jeopardy first attaches is with Mr. Justice Story's opinion in *United States v. Perez*, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824) that said:

> We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all of the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.

22 U.S. at 579. Through the years this standard of "manifest necessity" for a mistrial has continued to be applied by courts in determining whether or not a mistrial and subsequent trial constitutes double jeopardy.[12] Thus it has been held that the failure of a jury to agree on a verdict of either acquittal or conviction does not bar retrial of the defendant, *United States v. Perez*, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824); nor does the reversal of a conviction on appeal, *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).[13] Yet despite the many attempts to expound upon the meaning of what constitutes "manifest necessity," no precise formula has yet emerged. *See Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973) ("virtually all of the cases turn on the particular facts and thus escape meaningful categorization.")[14]

In *United States v. Starling*, 571 F.2d 934 (1978), this Court set out some of the broad standards to be applied in determining whether a mistrial barred a second prosecution:

> The decision to declare a mistrial and dismiss the jury is not to be undertaken lightly. The courts, in assessing the need to terminate the proceedings before conclusion, have been instructed to balance 'a defendant's valued right to have his trial completed by a particular tribunal' with the 'public's interest in fair trials designed to end in just judgments.' *Wade v. Hunter*, 336 U.S. [684] at 689–690, 69 S.Ct. [834] at 837 [93 L.Ed. 974]. And although a district court is accorded broad discretion in determining that particular circumstances arising at trial require it to abort the proceedings, 'reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised "sound discretion" in declaring a mistrial.' *Arizona v. Washington*, 98 S.Ct. at 835, *quoting United States v. Perez*, 22 U.S. at 579; *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In particular we must insure that the district court kept in the forefront the defendant's valued right 'of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.' *Id.* at 486, 91 S.Ct. at 558; *see Illinois v. Somerville*, 410 U.S. at 466, 93 S.Ct. 1066; *Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. 834. [Footnotes omitted].

571 F.2d at 938. In *Starling*, this Court also noted that while not determinative, the failure of a trial judge to consider adequately less severe alternatives to a mistrial shows "an inadequate concern for the severe consequences of ordering a mistrial without the accused's consent." *Id.* at 941, n.10. *Cf. United States v. Spinella*, 506 F.2d 426, 432 (5th Cir. 1975), *cert. denied*, 423 U.S. 917, 96

---

**12.** The standard is different where the mistrial has been declared at the defendant's request. *See United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

**13.** For a partial summary of some of these decisions, *see United States v. Starling*, 571 F.2d 934, 938 (5th Cir. 1978).

**14.** Recently the Supreme Court called for a "high degree" of manifest necessity before a mistrial is appropriate. *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978).

S.Ct. 227, 46 L.Ed.2d 147 (1975). In *Arizona v. Washington*, the Supreme Court noted that such a consideration is not constitutionally mandated when "the record provides sufficient justification" for the mistrial. 434 U.S. 497, 516–17, 98 S.Ct. 824, 836, 54 L.Ed.2d 717 (1978).

In this case, it is somewhat difficult to tell what the trial judge considered as alternatives since there is no transcript of the first trial. The trial court's order of mistrial mentions no consideration of other alternatives, such as the possibility of recessing the case for several days. From the record before us, we must conclude that Cherry did not consent to the mistrial and his attorney was not given an adequate opportunity to object.[15]

Having decided that, we conclude that the trial judge's action did not meet the high standard of "manifest necessity." We do not question the trial judge's sincerity in wishing to spare a juror the anguish of attending a trial after the death of his mother and his feeling that the juror would no longer be able to perform his duty adequately. But the death of a juror's relative does not constitute "manifest necessity" in all cases. Here, where the trial judge apparently did not canvass the alternatives such as continuance, it is clear that an inadequate concern for the rights of the accused to have his case tried once before the same tribunal was present.[16] Perhaps the juror would have been willing to continue hearing the trial. The judge could have inquired of the juror how long his absence would be and have delayed the trial for that length of time. But none of these steps was taken.[17] Unlike the factual situation in *Arizona v. Washington*, 434 U.S. 497, 500–01, 98 S.Ct. 824, 827, 54 L.Ed.2d 717 (1978), the trial court here did not give each side an opportunity to explain its position on a mistrial. Instead, the trial court acted unilaterally. From all of the facts before us, we cannot find that the court was solicitous enough of the defendant's valued right "to have his trial completed by the particular tribunal summoned to sit in judgment on him," *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), when it declared a mistrial with little inquiry because a juror's mother had died.

■ It is true that a number of courts have held that a death or illness in the family of a juror does provide proper grounds for a mistrial.[18] But most of those

---

**15.** The dissent says that the state trial judge gave Cherry's counsel the opportunity to propose other measures such as a continuance, and to object. It is difficult to make that determination from the record before us. The fact that the trial judge asked defendant's counsel if he was willing to proceed with 11 jurors, or that the judge asked defense counsel, before he announced his decision, if he wished to make a motion before the jury, does not mean that Cherry's counsel had an adequate opportunity to object to the granting of a mistrial. Since the trial judge, from the record before us, apparently had never mentioned the possibility of a mistrial, it is difficult to see what defense counsel could object to.

**16.** The dissent says that we base our conclusions "on the silence of the short mistrial order rather than on the contents of the full trial transcript." The reason we do that is because that is all we can do in this case, since the trial transcript is no longer available.

**17.** In a sense, the trial judge might not be expected to consider the alternatives in his order since the significance of such an explanation was not considered determinative until 1971 in *United States v. Jorn*, 400 U.S. 470,

487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971), decided almost eight years after this trial. As noted earlier, this requirement is not constitutionally mandated, though it is considered an important factor in the inquiry whether "manifest necessity" exists. *United States v. Starling*, 571 F.2d 934, 941 n.10. But the fact that the importance of such a canvassing may not have been as clearly delineated by the Supreme Court in 1963 when the trial judge declared the mistrial as now does not mean that factor is not considered.

**18.** See 53 A.L.R. 1062 (1928) Note: Illness or death of member of juror's family as justification for declaring mistrial and discharging jury in criminal case; *United States v. Armco Steel Corporation*, 252 F.Supp. 364, 370–71 (S.D.Cal. 1966): "Jeopardy does not attach when a jury has been sworn if there exists urgent circumstances or an emergency which by diligence and care could not have been averted, and when it appears that a free and fair trial cannot be had, the court may discharge the jury even over the objection of the accused.

It does not attach . . . where . . . a member of a juror's family becomes ill or dies . . . ."

cases were decided before the Supreme Court and lower courts had delineated the importance of the consideration of other less severe consequences to a mistrial.[19] As stated in *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971):

> . . . the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion [is made] . . . .

*Id.* at 485, 91 S.Ct. at 557. Given the development of the protections of the double jeopardy clause over the last fifteen years, we find that the death of a juror's relative cannot be considered an automatic ground for a mistrial.

Having ruled in Cherry's favor on his double jeopardy claim, we find it unnecessary to consider his other claims. Accordingly, we REVERSE and REMAND to the district court for proceedings not inconsistent with this opinion.

VANCE, Circuit Judge, dissenting:

I respectfully dissent from the panel's holding that the state trial judge was not justified by manifest necessity in declaring a mistrial. I believe that the Supreme Court's decision in *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), and other precedents require that we reject Cherry's double jeopardy claim.

### I.

The state trial judge properly decided not to compel the bereaved juror to remain through the trial, because that jury member would not have been able to consider the case fairly in his emotional distress. Cherry explicitly rejected the alternative of an eleven member jury. We do not know whether the trial judge formally discussed and assessed the possibility of a continuance. Cherry's counsel had an opportunity—which he did not take—to propose a continuance of the trial. Cherry's counsel had an opportunity—which apparently he did not take—to object to the mistrial.[1] Yet the panel majority today assumes, in the absence of a record that the trial judge did not consider alternatives to a mistrial. Their unsupported assumption that this habeas petitioner met his burden of proof is a significant departure from settled law. The panel decision effectively requires that a convicted armed robber be freed on that evanescent basis.

Cherry and two accomplices, all armed and wearing masks, abducted their victim at gunpoint and ordered him into a stolen automobile as the victim left his job for the evening. They took him back to his place of employment and forced him to open its door and the safe. Cherry and his cohorts then bound their victim and stole over $11,000. The prosecution produced overwhelming proof of Cherry's guilt: the victim and two witnesses identified him; Cherry drove the automobile and his fingerprints were found in it; and he and his wife were found carrying $1,230 in cash. His cellmate testified that Cherry subsequently offered him $2,000 to confess to Cherry's crime. The second jury found Cherry guilty of armed robbery, and the trial judge sentenced him to life imprisonment.

---

19. *See, e. g., Hawes v. State*, 88 Ala. 37, 7 So. 302 (1890); *Salistean v. State*, 115 Neb. 838, 215 N.W. 107 (1927); *Greenwalt v. State*, 246 Ind. 608, 209 N.E.2d 254 (1965). Of course, we are not bound by these decisions.

1. In his federal and state habeas corpus petitions, Cherry states by way of conclusion that he objected to the mistrial. In the paper that he filed in the district court captioned Petitioner's Traverse, however, his version of the colloquy which occurred on the morning mistrial was granted was as follows:

> Petitioner submits that his Counsel Pierre Howard did make an objection to the trial court's dispersal of the jury, but not in any exact words in front of the jury. The Judge, without any forewarning at all, proceeded to disperse the jurors with instructions and direction to return to the Court at 9:30 the following morning, and at that time Mr. Howard rose to approach the bench and the following took place: The Court: *"Mr. Howard, do you want to make a motion before the jury?* Answer by Mr. Howard: *"No your Honor, this is a matter of law."*

In his final order declaring mistrial the state judge noted that Cherry had not objected to the dispersal of the jury. Without a transcript of the proceedings we have no basis for concluding that the trial judge's memorialization of the events is incorrect.

## II.

A "mistrial declared over the objection of the defendant" violates the double jeopardy provision of the fifth and fourteenth amendments unless it is required by " 'manifest necessity.' " *Arizona v. Washington*, 434 U.S. at 505, 98 S.Ct. at 830 (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)). *Accord, United States v. Aguiar*, 610 F.2d 1296, 1301 (5th Cir. 1980). Manifest necessity does not mean absolute necessity that the judge declare a mistrial; "we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Arizona v. Washington*, 434 U.S. at 506, 98 S.Ct. at 831 (footnote omitted). *Accord, United States v. Starling*, 571 F.2d 934, 937 (5th Cir. 1978).

The required high degree of necessity supported the trial judge's action in this case. He learned during the trial that a juror's mother had died, and he decided against compelling that juror to remain until the jury reached a verdict. He asked Cherry whether he would consent to trial by an eleven member jury, but Cherry refused that alternative. He discussed the situation with Cherry's counsel, but Cherry's counsel apparently did not propose a continuance.[2]

The majority opinion denies that manifest necessity existed apparently because the state judge did not specifically consider and reject alternative measures in his written order.

> [W]e conclude that the trial judge's action did not meet the high standard of "manifest necessity." . . . Here, where the trial judge apparently did not canvass the alternatives such as continuance, it is clear that an inadequate concern for the rights of the accused to have his case tried once before the same tribunal was present.

The panel majority assumes what we do not know. We do not have the trial transcript because Cherry did not produce it and the state no longer has it after sixteen years;[3] we only have the three page order of mistrial. The majority opinion bases its conclusions—that the trial judge did not canvass alternatives, that Cherry's counsel did not have an opportunity to object, and that the trial judge did not act under manifest necessity—on the silence of the short mistrial order rather than on the contents of the full trial transcript.[4] The panel opin-

---

2. Cherry's state application for habeas corpus seems to recognize that he or his counsel had the opportunity to propose a continuance:

> [T]he Honorable Judge Alverson had the jury retire to the jury room, whereupon, he called the State and defense counsel to the bench and informed them that the mother of one of the jurors had died and inquired as to whether or not the state and defense would agree to dismiss this jury member and continue on with the other eleven jurors.
> After some discussion, the petitioner through his counsel, informed the Court that he desired to continue the trial with the twelve original jurors as prescribed by law.

His federal application for habeas relief is to the same effect.

3. This circuit did not grant habeas corpus in a case in which the state lost the transcript notes of the petitioner's guilty plea:

> [I]t is still the petitioner's burden in a habeas proceeding to demonstrate, at least prima facie, those facts that establish a constitutional violation. In deciding whether the petitioner's testimony alone meets that burden, and whether the state violated its duty in not

making a transcript available, all of the facts must be considered, including any delay by the petitioner in seeking relief and his opportunities for earlier applications.

. . . But in the absence of even the *petitioner's specific recollection of his hearing and any independent evidence suggesting that he was deprived of his rights,* the unavailability of a transcript six years after a guilty plea does not alone cast sufficient doubt on the fairness of that plea to warrant a further federal hearing or the granting of the requested relief.

*Clayton v. Blackburn*, 578 F.2d 117, 120 (5th Cir. 1978). *See also Norvell v. Illinois*, 373 U.S. 420, 424, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456 (1963) (fifteen years).

4. It is equally likely that the trial judge listed alternatives to mistrial, received objections from Cherry and his counsel, and made an explicit finding of manifest necessity for a mistrial. The trial judge in fact did discuss the situation with Cherry's counsel upon learning of the death of the juror's mother. *See* note 2 *supra.* The state judge then deliberated overnight before ordering the mistrial.

ion thereby concludes from the absence of evidence that Cherry has met his burden of proof, and presumes from a silent record that the state trial court did not correctly dispose of the case. This conclusion is erroneous. *See Townsend v. Sain,* 372 U.S. 293, 315, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963); [5] e. g., *Arizona v. Washington,* 434 U.S. at 516, 98 S.Ct. at 836.

The panel majority seems to require that a state judge specifically consider and reject alternatives to a mistrial, emphasizing that the "trial judge apparently did not canvass the alternatives such as [a] continuance." [6] That requirement contradicts the Supreme Court's holding in *Washington* that "[t]he state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed . . to articulate on the record all the factors

which informed the deliberate exercise of his discretion"—in this case, to state his reasons for rejecting alternative measures other than a mistrial. 434 U.S. at 517, 98 S.Ct. at 836 (footnote omitted).[7] The panel decision today also conflicts with the recent fifth circuit decision in *Grooms v. Wainwright,* 610 F.2d 344 (5th Cir. 1980):

> Even though other trial judges might have used cautionary instructions or other measures short of a mistrial to correct prejudice to the jury, a judge need not expressly consider these alternatives to satisfy the fifth amendment.

*Id.* at 346.[8] The majority's requirement also ignores the context of this mistrial: the challenged trial occurred in 1963, and the trial judge had no reason to articulate and explicitly to reject alternatives to a mistrial. The state judge had every reason

**5.** The Supreme Court said, for example, in *Townsend,*

> [T]he district judge may, in the ordinary case in which there has been no articulation [of the relevant constitutional standard], properly assume that the state trier of fact applied correct standards of federal law to the facts, in the absence of evidence . . . that there is reason to suspect that an incorrect standard was in fact applied.

372 U.S. at 315, 83 S.Ct. at 758 (footnote omitted).

**6.** The only apparent authority for the great weight that the majority gives the trial judge's consideration or nonconsideration of alternative dispositions is Judge Tuttle's opinion in *United States v. Starling,* 571 F.2d 934 (5th Cir. 1978):

> We recognize that the Supreme Court recently implied that explicit consideration of alternatives is not constitutionally mandated where "the record [otherwise] provides sufficient justification" for the mistrial. *Arizona v. Washington,* [434] U.S. at 517, 98 S.Ct. [824] at 836. However, in light of the sparse record here, we are not precluded from considering this factor in our review of the district court's exercise of discretion. Although not necessarily determinative, the failure to consider alternatives does indicate an inadequate concern for the severe consequences of ordering a mistrial without the accused's consent.

571 F.2d at 941 n. 10. The court in *Starling* then held that the mistrial was not justified by manifest necessity. That decision did not require consideration of alternatives or elevate that factor as this majority decision does; to the extent it did, it seems to conflict with the principle of deference to trial judges' evalua-

tions expressed by the Supreme Court in *Arizona v. Washington,* 434 U.S. at 513 & n. 33, 98 S.Ct. at 834 & n. 33.

**7.** Similarly, a trial judge is not required to make an explicit finding of manifest necessity:

> The absence of an explicit finding of "manifest necessity" appears to have been determinative for the District Court and may have been so for the Court of Appeals. If those courts regarded that omission as critical, they required too much. . . .
>
> Review of any trial court decision, is of course, facilitated by findings and by an explanation of the reasons supporting the decision. No matter how desirable such procedural assistance may be, it is not constitutionally mandated in a case such as this. . . . The basis for the trial judge's mistrial order is adequately disclosed by the record, which includes the extensive argument of counsel prior to the judge's ruling. The state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find "manifest necessity" in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion.

*Arizona v. Washington,* 434 U.S. at 516, 517, 98 S.Ct. at 836 (footnotes omitted). *Accord, Grooms v. Wainwright,* 610 F.2d at 346.

**8.** *See also Illinois v. Somerville,* 410 U.S. 458, 459, 93 S.Ct. 1066, 1068, 35 L.Ed.2d 425 (1973); *e. g. Gori v. United States,* 367 U.S. 364, 365, 81 S.Ct. 1523, 1524, 6 L.Ed.2d 901 (1961); *Thompson v. United States,* 155 U.S. 271, 273–74, 15 S.Ct. 73, 74, 39 L.Ed. 146 (1894); *Simmons v. United States,* 142 U.S. 148, 153–55, 12 S.Ct. 171, 172–73, 35 L.Ed. 968 (1891).

to know and to apply the venerable manifest necessity test, but no reason to foresee a new fifth circuit requirement imposed seventeen years later.

The state judge confronted a manifest necessity to do something. He apparently did consider compelling the bereaved juror to remain through the trial, and did consider proceeding with eleven jurors.[9] He may or may not have considered whether to continue the trial. That certainly was sufficient consideration of the alternatives to the mistrial ordered. *See, e. g. United States v. Pridgeon,* 462 F.2d 1094, 1095 (5th Cir. 1972); *Jones v. Anderson,* 404 F.Supp. 182, 188 (S.D.Ga.1974), *aff'd,* 522 F.2d 181 (5th Cir. 1975) (" 'manifest necessity' required a mistrial" when "the trial judge . . . was presented with a situation of no realistic alternative to a mistrial as a result of . . . the petitioner's insistence upon a twelve-person jury").

### III.

The Supreme Court in *Washington* required a " 'high degree' " of necessity that the trial judge take some action to ensure a fair trial, but also accorded "great deference" to the trial judge's " 'sound discretion' in declaring a mistrial." *Arizona v. Washington,* 434 U.S. at 514, 98 S.Ct. at 834–35. *Accord Grooms v. Wainwright,* 610 F.2d at 346.[10] Some action was clearly necessary. If reasonable judges could differ about the precise form that such action

should take, the trial judge acted within his sound discretion in rejecting alternatives and granting a mistrial, even though "[i]n a strict, literal sense, the mistrial [is] not 'necessary.' " *Arizona v. Washington,* 434 U.S. at 511, 98 S.Ct. at 833. *Accord Grooms v. Wainwright,* 610 F.2d at 347.[11]

I believe that the trial judge did not abuse his sound discretion in rejecting alternative measures and declaring a mistrial. Even if another judge or an appellate panel might have selected a less drastic alternative, a reasonable judge may have exercised sound discretion in ordering a mistrial. *Grooms v. Wainwright,* 610 F.2d at 347. *See Arizona v. Washington,* 434 U.S. at 512, 98 S.Ct. at 834; *United States v. Pridgeon,* 462 F.2d at 1095; *Jones v. Anderson,* 404 F.Supp. at 187–88. Although the trial judge did not expressly assess the alternative of a continuance, he considered other options and acted within his sound discretion under a high degree of necessity. *See, e. g., United States v. Pridgeon,* 462 F.2d at 1095 (failure to adopt an eleven member jury or other alternatives was not an abuse of sound discretion); *Jones v. Anderson,* 404 F.Supp. at 187 (failure to consider substituting a replacement juror when neither district attorney nor defense counsel advised the court of the option was not an abuse of sound discretion).

The majority opinion does not give any deference, much less "great deference," to

---

**9.** The trial judge cannot be faulted for possibly not considering the option of an alternate juror. Georgia law at the time of the trial did not require selection and empanelling of alternate jurors, but simply permitted it upon the request of counsel in the discretion of the trial judge. Ga.Code Ann. § 59–901 (1965) (subsequently repealed for certain purposes). Cherry implicitly denied that an alternate juror had been selected or rejected that option in demanding trial by "the twelve original jurors." Even if an alternate juror had been available, the trial judge reasonably could have rejected that option or could have failed to consider it. *See, e. g. Jones v. Anderson,* 404 F.Supp. at 187.

**10.** This circuit recently ruled in *Grooms,*
Because the trial judge is familiar with the events at trial and the factors leading to the mistrial order, appellate courts should give the judge's mistrial order the "highest degree of respect," . . . and commit the mis-

trial decision to the judge's "sound discretion."
610 F.2d at 346. *Accord, Smith v. Mississippi,* 478 F.2d 88, 95 (5th Cir.), *cert. denied,* 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740 (1973). The trial judge's disposition should be accorded "great deference" when the jury appears deadlocked and "special respect" when defendant's counsel injects prejudice, but should be given "strictest scrutiny" when the prosecutor brings about the mistrial for tactical reasons. *Arizona v. Washington,* 434 U.S. at 508, 510, 98 S.Ct. at 832, 833.

**11.** The fifth circuit recognized the trial judge's discretion in *Grooms:*
Even though, acting independently, we might have chosen a corrective measure less drastic than a mistrial, on appeal we must defer to the discretion of the trial judge.
610 F.2d at 347.

the trial judge's decision. It assumes from a missing transcript that he did not assess alternatives and did not have manifest necessity. It overlooks the opportunity that the state judge gave, and Cherry's counsel apparently did not take, to propose other measures such as a continuance.[12] It requires a mistrial to be absolutely necessary rather than being of a " 'high degree' " of necessity. It demands that the trial judge choose alternatives that a reasonable judge might reject.

The fact is that we do not have a trial transcript and cannot truthfully assert that the state trial judge did not consider mistrial alternatives and did not find manifest necessity. There was manifest necessity for the trial judge to take some action to ensure a fair trial. He did not abuse his sound discretion in reasonably deciding upon a mistrial, even if two appellate judges retrospectively would have decided differently. The state, as well as the petitioner, is entitled to fairness. *See United States v. Pridgeon,* 462 F.2d at 1095.

ON PETITION FOR REHEARING
AND PETITION FOR REHEAR-
ING EN BANC

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, JR., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON AND THOMAS A. CLARK, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

IT IS ORDERED that the cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk will spec-

ify a briefing schedule for the filing of supplemental briefs.