**Gary L. JONES**

v.

**William A. ANDERSON, Sheriff, Richmond County, et al.**

**Civ. A. No. 174–63.**

United States District Court,
S. D. Georgia,
Augusta Division.

Sept. 5, 1974.

---

John Fleming, Augusta, Ga., for plaintiff.

Richard Allen, Dist. Atty., Augusta, Ga., for defendants.

## ORDER

ALAIMO, District Judge.

In his petition for a writ of habeas corpus, petitioner seeks the reversal of state convictions in the Superior Court of Richmond County, Georgia, on the grounds that his retrial following a mistrial constituted double jeopardy barred by the Fifth and Fourteenth Amendments. He complains of his September 22, 1973, trial and conviction on charges of rape, aggravated assault, and armed robbery (two counts) which followed a mistrial on May 16, 1973, declared on the district attorney's motion over the petitioner's objection, when the trial judge found that one of the jurors had made a false statement on voir dire by failing to disclose his acquaintance with the prosecutrix and her husband.

Petitioner has exhausted available state remedies. *Jones v. State,* 232 Ga. 324, 206 S.E.2d 481 (1974).

### The Mistrial

Sometime prior to petitioner's first trial, the prosecutrix and her husband went to the house of the disqualified juror located approximately two blocks from their residence. The visit was oc-

casioned by their daughter's report that the juror's son had made insulting remarks to her on the school bus concerning the incident which gave rise to the charges against the petitioner. The prosecutrix's husband described their fruitless efforts to get the juror to reprimand his son as "not a friendly conversation."

At the start of petitioner's first trial on May 16, 1973, the suspect juror did not, during voir dire examinations, acknowledge his acquaintance or encounter with prosecutrix and her husband. He failed to respond affirmatively to the following question by the defense counsel:

"[I]s there any one here [potential jurors] acquainted with either of those ladies or members of their family—[stating the prosecutrix's and another person's names]?"

He had also previously not responded to a general question by the district attorney—"Is there any reason I haven't mentioned that you would be uncomfortable trying to sit as a fair and impartial juror in the trial of this case?" Two fellow-members of the juror's panel answered the question affirmatively; one relating his acquaintance with the prosecutrix's family, and the other stating that a relative had recently been raped. On the individual voir dire of the juror, the record indicates that his answer to the question: "Do you know anything about this case?" was transcribed as "(Reply inaudible)." Neither attorney, however, objected to his sitting on the jury. The jury was then selected, sworn, and sent to lunch together.

Following the lunch recess and before the presentation of any evidence, but outside the presence of the jury, the district attorney informed the trial judge that one juror was apparently aware of the facts of the case. Following defense counsel's refusal to agree to a jury of

eleven, the State moved for a mistrial. In support of the motion, the prosecutrix's husband related the details of the incident at the juror's house. After reviewing a recording of the voir dire and asking "Anything further," the court concluded, without further examining the suspect juror:

"[T]he termination of this trial is necessary because of a false statement of a juror on voir dire which prevents a fair trial. Therefore, I will grant the motion for a mistrial made by the District Attorney."

Petitioner's counsel then objected to the mistrial without specifying any reason.

It is significant to note at this point that neither the district attorney nor defense counsel advised the court of the alternative, short of a mistrial, permitted by Georgia Code § 59–809:

"When a juror shall have been found competent as aforesaid, no other or further investigation before triors or otherwise shall be had, except upon newly-discovered evidence to disprove his answer or to show him incompetent as aforesaid, which may be heard by the judge at any time before any of the evidence on the main issue shall be submitted; and if the juror shall be proved incompetent, the judge may order him withdrawn from the jury and cause another juror to be selected in the manner provided in this Chapter."

Georgia Laws, 1855–56, p. 231; Georgia Code § 59–809 (1933). From the record of the arguments before the trial judge, it is clear that neither the attorneys nor the judge were familiar with this statute.[1]

### The Attachment of Jeopardy

■ In light of recent decisions by the Supreme Court, the Fifth Circuit Court of Appeals, and the Supreme Court of Georgia, there is no doubt that

---

1. Their lack of familiarity with the provision is not surprising in light of the scant appellate consideration of the statute. For example, the most recent appellate applica-

tion of the juror replacement provision is apparently *Minyard v. State,* 17 Ga.App. 398, 87 S.E. 710 (1915).

jeopardy attached at petitioner's first trial, on May 16, 1973, when the jury was selected and sworn. *See Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *United States v. Dinitz,* 492 F.2d 53 (5th Cir. 1974); and *Ferguson v. State,* 219 Ga. 33, 35, 131 S.E.2d 538 (1963), *cert. denied,* 381 U.S. 905, 85 S.Ct. 1451, 14 L. Ed.2d 286 (1965).

### The "Bias" Juror Cases

Petitioner argues principally that there was no manifest necessity in declaring a mistrial because (1) the incompetence of the juror was never clearly established; (2) his competence was, in fact, established by the record as a whole; and (3) even if the juror was not qualified, the court failed to utilize the alternative of substituting a replacement juror.

■ The issue before the Court involves only the question of whether the trial judge abused sound judicial discretion in declaring the mistrial over the petitioner's objection. As summarized recently in *Illinois v. Somerville,* 410 U. S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), the determining factors are "whether the declaration of a mistrial was required by 'manifest necessity' or the 'ends of public justice.'" 410 U.S. at 468, 93 S.Ct. at 1072. Thus, a trial judge does not abuse sound judicial discretion, in declaring a mistrial over a defendant's objection, where "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), quoted approvingly in *Illinois v. Somerville,* 410 U.S. at 461, 93 S.Ct. 1066. *See United States v. Moon,* 491 F.2d 1047, 1049 (5th Cir. 1974), and *Smith v. Mississippi,* 478 F.2d 88, 94 (5th Cir. 1973), *cert. denied,* 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740 (1973).

In summarizing the "bias" juror cases, the Supreme Court has concluded that

"[a] trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached . . . ." *Illinois v. Somerville,* 410 U. S. at 464, 93 S.Ct. at 1070. That Court has held a number of times that a mistrial, following the discovery of a juror's possible incompetence, does not bar retrial under the Double Jeopardy Clause. For example, in *Simmons v. United States,* 142 U.S. 148, 12 S.Ct. 171, 35 L. Ed. 968 (1891), the jury was dismissed over the defendant's objection because one juror had been acquainted with the defendant and was, therefore, probably prejudiced against the Government. The Court reasoned:

> "There can be no condition of things in which the necessity for the exercise of this power [to grant a mistrial] is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that, either by reason of facts existing when the jurors were sworn, but not then disclosed or known to the court, or by reason of outside influences brought to bear on the jury pending the trial, the jurors, or any of them, are subject to such bias or prejudice as not to stand impartial between the government and the accused."

142 U.S. at 154, 12 S.Ct. at 172. *See also, Thompson v. United States,* 155 U. S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894). Similarly, on a claim of double jeopardy in *Smith v. Mississippi,* 478 F.2d 88 (5th Cir. 1973), the court found that a state trial judge's declaration of a mistrial was "not unreasonable" where a juror had made statements indicating a possible preconception as to the defendant's innocence prior to the presentation of any evidence.

Mr. Justice Black has succinctly summarized the standard generally applicable in "bias" juror cases:

> "[T]here have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury *might be biased* against the Government or the

defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial." (Emphasis added)

*Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949).

■■ Petitioner contends, however, that the trial judge erred in excluding the juror because the evidence did not affirmatively show the juror, in fact, had a particular bias or prejudice and because the record established his competence to serve as a juror. Petitioner misconstrues and confuses the law in cases where a juror is disqualified with cases where a convicted defendant assigns error on the court's failure to exclude an incompetent juror. In the latter cases, the trial court errs in failing to exclude a juror with a clearly fixed opinion, bias, or prejudice. *See Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L. Ed.2d 751 (1961); and *Willis v. State*, 12 Ga. 444 (1853). In contrast, a trial judge properly exercises his discretion in excluding a juror and declaring a mistrial where a juror "might be biased against the Government or the defendant." *Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. at 837. *See Simmons v. United States, supra*; and *Smith v. Mississippi, supra*. Consequently, petitioner's arguments are inapposite. The controlling principle is whether, under all the circumstances, the trial judge could have reasonably determined that the excluded juror might have had a bias or prejudice against the State or the defendant.

■ In the case at bar, the record shows not only that the juror lived near the prosecutrix but also that he was, in fact, acquainted with the prosecutrix and her husband as a result of the very event out of which the criminal charges against the petitioner arose. The record further shows that the suspect juror had an angry encounter with the prosecutrix and her husband. On the basis of the record, the Court accepts the conclusions of the trial court and the Supreme Court of Georgia that the juror made a "false statement" in failing to

volunteer his acquaintance with the prosecutrix, especially in light of one panel member's admission of his acquaintance with the prosecutrix's family. 232 Ga. at 333, 206 S.E.2d 481. Moreover, the trial judge, having a first hand view of the facts and circumstances, could have reasonably concluded that the suspect juror was "subject . . . to such bias or prejudice as not to stand impartial between the government and the accused." *Simmons v. United States*, 142 U.S. at 154, 12 S.Ct. at 172. Accordingly, the exclusion of the juror and the resulting mistrial did not, without more, constitute an abuse of discretion.

■ Similarly, a trial judge does not abuse his discretion in failing to interrogate a suspect juror on his competency when prior evidence indicates substantial doubt as to the juror's qualifications. *Whitfield v. Warden*, 486 F.2d 1118, 1123 (4th Cir. 1973). There the trial judge declared a mistrial when a juror inadvertently entered the court room during arguments on motions. The court accepted the statement of one attorney that the jury room door had been open during the course of the arguments. The judge then declared a mistrial without questioning the juror as to what, if anything, he had overheard. Likewise, in such cases as *Simmons v. United States, supra; Thompson v. United States, supra; United States v. Chase*, 372 F.2d 453 (4th Cir. 1967), *cert. denied*, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967); and *United States v. Smith*, 390 F.2d 420 (4th Cir. 1968), the reviewing courts did not require the trial judge to determine the juror's opinion as to whether or not he was subject to bias or prejudice because of the disqualifying event. Moreover, the Fifth Circuit Court of Appeals has implicitly recognized that a trial judge can even disregard a juror's testimony that he was not subject to any bias or prejudice because of a potentially disqualifying event. *Smith v. Mississippi, supra*. The record here clearly indicates that the trial judge could have reasonably

concluded that the suspect juror might lack the requisite impartiality; consequently, the judge did not abuse his discretion by failing to pursue the interrogation.

In summary, the mere exclusion of the suspect juror in this case, without examining him further, did not, without more, constitute an abuse of discretion.

### The Replacement Juror Provision

The only remaining issue is whether, upon finding the single juror unqualified, the trial judge abused his discretion in failing to utilize the Georgia procedure for substituting a replacement juror under Georgia Code § 59–809 (quoted above).

Initially, the court notes that this provision is permissive, rather than mandatory under Georgia law: "[T]he judge *may* order him [the disqualified juror] withdrawn from the jury and cause another juror to be selected . . . ." (Emphasis added). Ga.Code § 59–809. *See Jones v. State,* 232 Ga. 324, 332, 206 S.E.2d 481 (1974). Additionally, Georgia law permits a trial judge to terminate a criminal trial where "false statements of a juror on voir dire prevent a fair trial." Ga.Acts 1968, pp. 1249, 1267 [Ga.Code Ann. § 26–507(e)(2)(d)]. From the record of the trial judge's oral decision—"the termination of this trial is necessary because of a false statement of a juror on voir dire which prevents a fair trial," it is clear that he relied on the more recent Georgia statute.

Petitioner argues that the available option of selecting a replacement juror eliminated any "manifest necessity" or the protection of the "ends of public justice" as a basis for the declaration of a

mistrial at his first trial. He also suggests that the tri•¹ court is *required* by the Double Jeopardy Clause to utilize an available alternative and that failure to do so constitutes an abuse of discretion.

In answering the petitioner's contention that the Double Jeopardy Clause makes imperative the implementation of an alternative less drastic than a mistrial, the Court notes that from *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), to *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed. 2d 425 (1973), the Supreme Court has consistently rejected the formulation of rigid rules governing the application of the Double Jeopardy Clause and has stated that each case must turn on its own particular facts. Recent Supreme Court cases, such as *Illinois v. Somerville, supra; United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States,* 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed. 2d 100 (1965); and *Wade v. Hunter, supra;* adequately demonstrate that "the Court's ruling with respect to alternatives to mistrial . . . cannot be applied literally to the problem confronting a trial judge who fears that a juror has been exposed to improper influences." *Whitfield v. Warden,* 486 F.2d 1118, 1122 (4th Cir. 1973). See Mr. Justice Marshall's dissent in *Illinois v. Somerville,* 410 U.S. at 438–42, 93 S.Ct. 1066. In light of the discretionary language of Georgia's replacement juror provision and the flexible guidelines authored by the Supreme Court, one must conclude that petitioner has failed to demonstrate that either Georgia law or the Double Jeopardy Clause requires the implementation of the replacement juror alternative.[2]

---

2. Moreover, there is some, though not substantial, authority to the effect that the substitution of a new juror for a disqualified juror after the swearing of the jury deprives the criminal defendant of the jury first impaneled and constitutes impermissible double jeopardy. See cases cited in Annotations, 33 A.L.R. 142 (1924), and 28 A.L.R. 849 (1924), and in volumes 1–4 of the A.L.R. Blue Book of Supplemental decisions for these annotations. As stated by respondents: "[h]ad the trial court applied § 59–809 and replaced [the disqualified juror] with another juror, would not the Petitioner have lost his right to be tried by the particular tribunal first picked?"

Did the court, however, abuse its discretion in failing to utilize the alternative provision? At this Court's evidentiary hearing, both parties conceded that neither the district attorney nor the defense counsel were aware of the replacement juror provision and, consequently, that neither advised the trial judge of the statute, Ga.Code § 59–809. Under the facts before the trial judge—petitioner's refusal to submit to an eleven-person jury, the court's substantial doubt as to the competency of the juror, and the *general unawareness of the replacement juror provision*, the trial judge, after making a good faith effort to discover other alternatives, chose the only available alternative—the mistrial. On this aspect, the case differs substantially from *United States v. Dinitz*, 492 F.2d 53 (5th Cir. 1974), where the appellate court found that the trial judge had abused his discretion in declaring a mistrial by not considering alternatives to the event that precipitated the mistrial. Similarly, this case is entirely unlike *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), where the trial judge acted abruptly, failed to give the attorneys an opportunity to suggest alternatives, and "made no effort to exercise a sound discretion . . . ." 400 U.S. at 487, 91 S.Ct. at 558. In contrast, the trial judge here acted with due consideration, giving the attorneys ample opportunity to present evidence, arguments, and possible alternatives, and then exercised reasonable sound discretion on the alternative present. A trial judge is required to do no more.

"What is of controlling importance is that the state trial judge first painstakingly weighed all the factors present and thereupon exercised the discretion invested in him."

*Smith v. Mississippi*, 478 F.2d at 96.

As the trial judge viewed the case, he was presented with a situation of no realistic alternative to a mistrial as a result of his apparent conclusion that the juror was incompetent and the petitioner's insistence upon a twelve-person jury. One can only conclude that from the trial judge's point of view "manifest necessity" required a mistrial.

Unlike the situation in *Downum v. United States, supra*, where the Supreme Court held that a mistrial barred retrial because of the potential for prosecutorial manipulation, there is no suggestion by petitioner that the district attorney's motion for a mistrial was prompted by any consideration other than his desire that the State get a fair trial. While a criminal defendant has a weighty interest "in having his fate determined by the jury first impaneled," his interest may be "outweighed by the competing and equally legitimate demand for public justice." *Illinois v. Somerville*, 410 U.S. at 471, 93 S.Ct. at 1073. *See Wade v. Hunter*, 336 U.S. at 688–89, 69 S.Ct. 834. It is evident from the record that both the trial judge and the district attorney sought only a fair trial and the preservation of the "ends of public justice." Where a juror might be incompetent, the Supreme Court has suggested that public justice places a duty on the trial judge to discharge the jury and direct a retrial. *Wade v. Hunter*, 336 U.S. at 688–89, 69 S.Ct. 834. That is precisely what the trial judge did in this case.

■ In summary, the Court finds that where, after requesting and considering alternatives to aborting a trial, the trial judge in good faith declares a mistrial because false statements of a juror might prevent a fair trial, the trial judge has not abused sound judicial discretion. In such a case, the Double Jeopardy Clause does not bar retrial of a state criminal defendant.

Accordingly, petitioner is denied federal habeas corpus relief and is remanded to the respondent's custody.