**James Walter CHERRY,**
**Petitioner–Appellant,**

v.

**DIRECTOR, STATE BOARD OF CORRECTIONS, Respondent–Appellee.**

No. 79–1525.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1981.

J. Michael Lamberth, Atlanta, Ga., (Court–appointed), for petitioner–appellant.

John W. Dunsmore, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent–appellee.

Before COLEMAN, Chief Judge, BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJO-FLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON and THOMAS A. CLARK, Circuit Judges.*

VANCE, Circuit Judge:

James Walter Cherry was convicted of robbery in the superior court of Fulton County, Georgia on November 6, 1963 and was sentenced to life imprisonment. On March 17, 1978 Cherry petitioned the district court for writ of habeas corpus alleging among other grounds that his retrial following a mistrial unconstitutionally placed him twice in jeopardy for the same offense. The district court denied relief but a panel of this court reversed. 613 F.2d 1262 (5th Cir. 1980). On consideration by the court en banc we affirm the district court's denial of habeas corpus relief.

## I. THE TRIAL AND REVIEW

Armed and wearing a mask, Cherry and two accomplices abducted William Strickland at gunpoint and ordered him into a stolen automobile as Strickland left his job for the evening. They took him back to his place of employment and forced him to open its door and safe. They then stole over $11,000 in cash and left Strickland tied up by the safe. Although he could not positively identify Cherry's face because of the ski mask Strickland made a positive identification of his shoes and voice and testified that Cherry's build and facial shape were identical to that of one of the robbers. An eyewitness positively identified Cherry as a passenger in the stolen getaway vehicle. Cherry's fingerprints

---

* Circuit Judge Jerre S. Williams has become a member of the Court since this case was taken under submission. He elects not to participate in the decision.

were found in the getaway car when it was located abandoned an hour later. At the time of Cherry's subsequent arrest he and his wife were carrying $1,230 in cash. After his arrest he offered his cellmate $2,000 to "take the rap" and described to the cellmate how the robbery occurred.

During Cherry's first trial in October 1963 the trial judge received information that a juror's mother had just died.[1] The judge had the jury retire to the jury room, called counsel to the bench and informed them of the development. He inquired as to whether the state and defense would agree to dismiss that juror and continue with eleven. After some discussion[2] Cherry's counsel informed the court that he desired to continue the trial with the original twelve jurors as prescribed by law. The judge then proceeded to disperse the jurors with the instructions given in a capital case and directed them to return to court at 9:30 o'clock the following morning. During the overnight recess the court confirmed that the juror's mother had in fact died. He excused the juror from further participation in the case and on the next morning when court reconvened he declared a mistrial.[3] His written order is set out as an appendix to this opinion.

When he was retried in November 1963, Cherry was convicted of armed robbery on the basis of overwhelming evidence. He appealed to the Supreme Court of Georgia which held that he had not sufficiently presented the issue of double jeopardy to require review. It rejected Cherry's various other contentions and affirmed his conviction. *Cherry v. State*, 220 Ga. 695, 141 S.E.2d 412 (1965). Ten years later in a state habeas corpus petition Cherry raised only the double jeopardy issue. The trial court denied the writ and the state supreme court denied a certificate of probable cause.

Cherry currently is incarcerated in Texas under a life sentence for a state conviction there. Georgia has lodged a detainer for his challenged sentence to commence upon his release by Texas. *See Braden v. Thirtieth Judicial Circuit Court*, 410 U.S. 484, 488–89, 93 S.Ct. 1123, 1126–27, 35 L.Ed.2d 443 (1973).

Cherry filed this federal habeas petition in 1978 challenging his conviction on the basis of double jeopardy and claiming errors involving a police officer's testimony, prosecutorial misconduct, the disqualification of jurors, and the state's failure to disclose a plea bargain with his cellmate in violation of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The district court found against Cherry on the merits of each of his contentions except for the *Giglio* issue which it declined to consider, finding that Cherry had purposefully bypassed his available state remedy.

Cherry produced no transcript of the proceedings leading up to the mistrial in his first case. When his petition was filed in district court, the magistrate issued a routine order directing respondent to file a transcript. Six weeks later the magistrate issued a second order specifically requiring that the transcript of the October 1963 proceedings which ended in a mistrial be furnished. Because of the passage of fifteen years, deaths and changes in personnel, neither a transcript nor the court reporter's notes could be located. When the case reached the district judge, he issued a further order requiring that an exhaustive search be conducted. The search was accomplished but produced no results. At this point respondent urged that the petition be dismissed under Rule 9(a) of the Rules Governing § 2254 Cases because the lapse of time obviously had prejudiced his

---

1. The information was received by the trial judge at around 4:30 p. m. on the first day of trial while the third witness was testifying.

2. Cherry's petitions for habeas corpus reflect that at this point there was some discussion between court and counsel.

3. The record before us does not indicate that Cherry's counsel offered any suggestion, proposal or motion, and, except for his objection to proceeding with eleven jurors, it does not indicate that he made any objection. The Order of Mistrial discloses that his counsel was given an opportunity to make a motion before the jury was dispersed on October 23, 1963.

ability to comply with the court's directive.[4] Cherry conceded that a diligent search had been made. Countering respondent's assertion of prejudice he urged that the absence of a transcript not be held against respondent alleging "the only pertinent part of the record relating to the mistrial is transcribed within the trial court's Order of Mistrial."

■ We adopt that portion of the panel decision which holds that because Cherry had not exhausted his state remedies as to the *Giglio* issue it was not necessary to consider the bypass question. The panel majority also correctly concluded that this court is not foreclosed from considering Cherry's double jeopardy claim since the district court reached the merits of an exhausted claim in this mixed petition, *Galtieri v. Wainwright*, 582 F.2d 348, 362 (5th Cir. 1978) (en banc). We have also considered the other contentions presented by Cherry's petition which were not considered by the panel and find that they present no reversible error.

## II. MISTRIAL ORDER

Cherry relies on an application of the constitutional principle that the Supreme Court explicated over 150 years ago in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824),

> We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury

from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . .

■ Absent prosecutorial or judicial overreaching, a defendant's motion or consent to mistrial ordinarily is assumed to remove any barrier to reprosecution. Where, as here, the mistrial does not result from defendant's motion, the *Perez* doctrine of manifest necessity controls. *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion); *United States v. Dinitz*, 424 U.S. 600, 606–07, 96 S.Ct. 1075, 1078–80, 47 L.Ed.2d 267 (1976).

At the critical moment during Cherry's first trial there was a manifest necessity that the trial judge do something. Common experience teaches that the sudden death of a juror's parent would so emotionally incapacitate the juror as to make his uninterrupted service impractical. It is unlikely that he could continue to serve in a manner that would insure a fair trial to either party. The question on which our attention focuses, therefore, is not that the trial judge took some action, but on the

---

4. Although the district court did not rule on the state's motion, we note that Cherry's petition may well have been subject to dismissal under Rule 9(a). There are two requirements for 9(a) dismissal: the petitioner must have unreasonably delayed filing his petition, without good justification or excuse, and the state must demonstrate that it has suffered actual prejudice from the delay. *Mayola v. Alabama*, 623 F.2d 992, 999 (5th Cir. 1980). Cherry's conviction was affirmed by the Supreme Court of Georgia on March 3, 1965. The state petition for habeas corpus, with which he exhausted his state remedy, was filed on April 4, 1975, a delay of ten years. The federal petition before us was not filed until March 17, 1978. Making all allowances for the difficulties facing a pro se petitioner, Cherry's lateness is simply not adequately explained. The prejudice claimed by

the state is the absence of a transcript of the first trial. The Advisory Committee Note to Rule 9 explicitly deals with this situation:

> The petitioner . . . may at some date, perhaps ten or fifteen years after conviction, decide to challenge the state court judgment. . . . When [claims] are asserted after the passage of many years, both the attorney for the defendant and the state have difficulty in ascertaining what the facts are . . . . The court reporter's notes may have been lost or destroyed, thus eliminating any exact record of what transpired. . . . As a consequence, there is obvious difficulty in investigating petitioner's allegations. The interest of both the petitioner and the government can best be served if claims are raised while the evidence is still fresh.

nature of the specific action and the manner in which such action was taken.

The necessity for some action does not automatically justify the granting of a mistrial. *United States v. Jorn* and *Illinois v. Somerville*, 410 U.S. 458, 469–70, 93 S.Ct. 1066, 1072–73, 35 L.Ed.2d 425 (1973), demonstrate that before granting a mistrial it is incumbent on the trial judge to consider available alternatives. The circumstances in the case before us are in marked contrast with those in *Jorn*, however, where the trial judge abruptly declared a mistrial without discussion with the attorneys so that witnesses in the case might consult counsel.

> [I]t seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of this mistrial.

*United States v. Jorn*, 400 U.S. at 487, 91 S.Ct. at 558. Here, the action of the trial court was not abrupt, but was taken only after inquiry and overnight deliberation, after at least some consultation with counsel during which Cherry's counsel rejected one available alternative, and after Cherry's counsel was afforded but declined the opportunity to make a motion. The present situation does not involve any prosecutorial or judicial overreaching. Cherry's particular contention is that the trial judge erred in selecting the alternative of a mistrial.

▪ Recent amplification of the controlling principles is found in *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978),

The state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed . . . to articulate on the record all the factors which informed the deliberate exercise of his discretion.

*Id.* at 517, 98 S.Ct. at 836 (footnote omitted).[5] Similarly, a trial judge does not err for failing to consider or adopt a specific alternative for a mistrial. *Grooms v. Wainwright*, 610 F.2d 344 (5th Cir.), *cert. denied*, 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980); *United States v. Pridgeon*, 462 F.2d 1094, 1095 (5th Cir. 1972). This circuit held in *Grooms*,

> Even though other trial judges might have used cautionary instructions or other measures short of a mistrial to correct prejudice to the jury, a judge need not expressly consider these alternatives to satisfy the fifth amendment.

*Id.* at 346. While *Jorn* requires that alternatives to a mistrial be considered, we think it also clear that the Constitution does not require canvassing of specific alternatives or articulation of their inadequacies.

▪ Manifest necessity does not mean absolute necessity that a judge declare a mistrial; "we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Arizona v. Washington*, 434 U.S. at 506, 98 S.Ct. at 830 (footnote omitted). In reviewing such an action by a state trial judge, we must accord "great deference" to the trial judge's " 'sound discretion' in declaring a mistrial." *Id.* at 514, 98 S.Ct. at 834.[6] A trial judge has acted

---

5. Although not required, it is probably desirable for the trial judge to make as complete a record as possible. The desirability of such practice, however, could not have been fully appreciated by the judge who presided over Cherry's first trial which predated *Jorn* by eight years and *Arizona* by fifteen. Indeed, at the time of the trial the fifth amendment guarantee against double jeopardy had not yet been held applicable to the states under the fourteenth amendment. *Compare Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937) *with Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Had the trial judge looked to federal law for guid-

ance anyway, he would have observed that in the most recent Supreme Court decision on point, *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), the court upheld a *sua sponte* declaration of mistrial under the doctrine of "manifest necessity" when the trial judge not only failed to discuss all the factors involved in his decision, but neglected even to state the grounds for the mistrial. That the judge in Cherry's trial nevertheless took the trouble to review as much of the circumstances as he did in his order of mistrial demonstrates a high degree of care and prudence.

6. This circuit ruled in *Grooms*,

within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though "[i]n a strict, literal sense, the mistrial [is] not 'necessary.'" *Id.* at 511, 98 S.Ct. at 833. This great deference means that the availability of another alternative does not without more render a mistrial order an abuse of sound discretion. *See United States v. Pridgeon*, 462 F.2d at 1095; *Jones v. Anderson*, 404 F.Supp. 182, 187–88 (S.D.Ga.1974), *aff'd mem.*, 522 F.2d 181 (5th Cir. 1975). Deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights or of federal statutory protections. *Townsend v. Sain*, 372 U.S. 293, 314–15, 83 S.Ct. 745, 757–58, 9 L.Ed.2d 770 (1963); *see Norvell v. Illinois*, 373 U.S. 420, 424, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456 (1963); *e. g., Arizona v. Washington*, 434 U.S. at 516–17, 98 S.Ct. at 835–36; *Gori v. United States*, 367 U.S. 364, 367, 81 S.Ct. 1523, 1525, 6 L.Ed.2d 901 (1961).[7] Because the habeas corpus petitioner carries the burden of establishing a prima facie deprivation, his self–serving assertions, without record support, do "not alone cast sufficient doubt on the fairness of that [mistrial] to warrant . . . the granting of the requested relief." *Clayton v. Blackburn*, 578 F.2d 117, 120 (5th Cir. 1978). *See also Norvell v. Illinois*, 373 U.S. at 424, 83 S.Ct. at 1368; *Bowen v. United States*, 192 F.2d 515, 517 (5th Cir. 1951), *cert. denied*, 343 U.S. 943, 72 S.Ct. 1036, 96 L.Ed. 1348 (1952).

We do not have here a situation like *Jorn*, "with action by a trial judge that can fairly be described as erratic." *Illinois v. Somerville*, 410 U.S. at 469, 93 S.Ct. at 1072. On the contrary, the judge in Cherry's case was acting in accord with the common practice of declaring a mistrial when, for good reason, a judge or juror ceases to attend, *see e. g., Smith v. Mississippi*, 478 F.2d 88 (5th Cir.), *cert. denied*, 414 U.S. 1113, 94 S.Ct. 844, 38 L.Ed.2d 740 (1973) (juror bias); *United States v. Lynch*, 598 F.2d 132 (D.C.Cir.1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1287, 59 L.Ed.2d 498 (1979) (illness of judge); *United States v. Potash*, 118 F.2d 54 (2d Cir.), *cert. denied*, 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540 (1941) (illness of juror). The proposition that the legitimate unavailability of a juror is "manifest necessity" permitting retrial has been widely accepted, in varying formulations, *e. g., Whitfield v. Warden of Maryland House of Correction*, 486 F.2d 1118, 1121 (4th Cir. 1973), *cert. denied*, 419 U.S. 876, 95 S.Ct. 139, 42 L.Ed.2d 116 (1974); *Oelke v. United States*, 389 F.2d 668, 671 (9th Cir. 1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1420, 20 L.Ed.2d 286 (1968); *Larios v. Superior Court*, 24 Cal.3d 324, 330, 594 P.2d 491, 494, 155 Cal.Rptr. 374, 377 (1979); *State v. Critelli*, 237 Iowa 1271, 1278, 24 N.W.2d 113, 117 (1946); Comment, *Retrial After Mistrial: The Double Jeopardy Doctrine of Manifest Necessity*, 45 Miss.L.J. 1272, 1282 (1974); 21 Am.Jur.2d *Criminal Law* § 203 (1965); for older cases see *Stocks v. State*, 91 Ga. 831, 18 S.E. 847 (1893); Annot., 53 A.L.R. 1062 (1928).[8] Recent Su-

---

Because the trial judge is familiar with the events at trial and the factors leading to the mistrial order, appellate courts should give the judge's mistrial order the "highest degree of respect," . . . and commit the mistrial decision to the judge's "sound discretion."
610 F.2d at 346.

The trial judge's disposition, however, should be given "strictest scrutiny" when the prosecutor brings about the mistrial in bad faith for tactical reasons. *Arizona v. Washington*, 434 U.S. at 508, 98 S.Ct. at 831.

**7.** The Supreme Court said, for example, in *Townsend.*

[T]he district judge may, in the ordinary case in which there has been no articulation [of the relevant constitutional standard], properly assume that the state trier of fact applied correct standards of federal law to the facts, in the absence of evidence . . . that there is reason to suspect that an incorrect standard was in fact applied.
372 U.S. at 315, 83 S.Ct. at 758 (footnote omitted).

**8.** We are, of course, aware of occasional cases to the contrary, such as *Baker v. Commonwealth*, 280 Ky. 165, 132 S.W.2d 766 (1939). However, it must be borne in mind that we sit as a federal court reviewing state procedures. A state supreme court can impose more rigorous standards under its own constitution that

preme Court cases have cast no doubt on the vitality of the basic proposition, *see Gori v. United States*, 367 U.S. at 372–73, 81 S.Ct. at 1528 (Douglas, J., dissenting).[9]

■ In short, we are faced with a trial judge who discussed the matter with the attorneys, confirmed the information regarding the death, and ruled in accordance with a proposition voiced by both federal and state courts. There is no indication of judicial or prosecutorial overreaching, nor even any evidence that the prosecution profited at all by the declaration of mistrial.

Although another judge may have granted a continuance when faced with the emergency which arose in Cherry's first trial, a reasonable judge might have ordered a mistrial, *see Smith v. Mississippi*, 478 F.2d at 96. Even without a transcript we know that the trial judge considered other alternatives. We do not know all the alternatives he may have considered because of the absence of any transcript, but his actions amply demonstrate the exercise of sound discretion in the face of manifest necessity.[10] *Arizona v. Washington*, 434 U.S. at 514, 98 S.Ct. at 834; *United States v. Pridgeon*, 462 F.2d at 1095; *Jones v. Anderson*, 404 F.Supp. at 188 (When "the trial judge . . . was presented with a situation of no realistic alternative to a mistrial as a result of . . . the petitioner's insistence on a twelve–person jury . . . 'manifest necessity' required a mistrial.").

AFFIRMED.

the federal constitution demands, *see generally Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 80, 100 S.Ct. 2035, 2040–41, 64 L.Ed.2d 741 (1980). Similarly, were this an appeal from a declaration of mistrial by a federal court, we might approach the matter differently under our supervisory powers, *see* Holleman, *Mistrials and the Double Jeopardy Clause*, 14 Ga.L.Rev. 45, 64–68 (1979). In a collateral attack on a state trial, however, once we have determined that minimal federal standards have been met, our inquiry is at an end.

**9.** *Jorn* and *Downum* are not to the contrary. Even read "expansively," they hold "that 'manifest necessity' cannot be created by errors on the part of the prosecutor or judge; it must arise from some source outside their control."

## APPENDIX

The following is the full text of the mistrial order:

| THE STATE OF GEORGIA | ) | No. 84458 |
|---|---|---|
| vs. | ) | FULTON SUPERIOR COURT |
| JAMES WALTER CHERRY | ) | (ROBBERY) |

## ORDER OF MISTRIAL

At approximately 4:30 P.M. yesterday afternoon while on a recess in the trial of this case, the Court received a message from the Clerk of this Court informing it that the mother of one of our jurors [had died], the juror being Mr. Royce Terry, and having been selected in the trial of this case and actually serving on the jury, two witnesses having been examined on the witness stand and the third witness being on the witness stand at the time of the recess. The Court made a preliminary telephonic investigation confirming the tragedy during the recess to determine the veracity of the message relating to the death of the juror's mother, and the Court concluded at that time that Mrs. Terry, the mother of the juror had passed away in Fulton County, the same being in the jurisdiction of this Court, a short time prior to the calling of the recess and during the trial of this case.

In coming back into the courtroom, the Court informed counsel for the defendant and counsel for the State about the death of the mother of one of the jurors, at which time the Court asked counsel for the defendant as to whether or not he would waive the presence of the juror; namely,

*Illinois v. Somerville*, 410 U.S. at 483 n. 2, 93 S.Ct. at 1080 n. 2 (Marshall, J., dissenting).

Under Fed.R.Crim.P. 23(b), a federal judge, presented with a situation such as occurred here, might ascertain whether all parties are willing to proceed with eleven jurors, *Whitfield v. Warden of Maryland House of Correction*, 486 F.2d at 1121 n. 6. We note that, independent of the federal rules, the trial judge in this case investigated precisely that possibility.

**10.** We do not read the record before us to support the holding of the panel majority that "the trial judge apparently did not canvass the alternatives such as continuance . . . . But, none of these steps was taken . . . . Instead, the trial court acted unilaterally."

Mr. Royce Terry, and whether or not he would be willing to proceed with the trial of the case with eleven jurors, at which time counsel for the defendant informed the Court that he wished to proceed with the trial of the case with the twelve jurors previously selected, at which time the Court proceeded to disperse the jurors with proper instructions in a capital case and directed them to return to the Court at 9:30 o'clock this morning, the same being October 24, 1963, the second day of said trial.

Counsel for the defendant did not make any motion in the presence of the jury or objection in the presence of jury to their being dispersed and since the jury was dispersed yesterday afternoon, the Court has definitely confirmed that the mother of Mr. Royce Terry did pass away at the previously stated time during the trial of this case.

This Court at the present time feels that it would be inhuman, indecent, inappropriate, cruel and an injustice to require Mr. Royce Terry to have been in Court this morning. Therefore, after absolute confirmation by the Court, the Court has excused Mr. Terry from further jury service in this case.

It is the opinion of this Court that this is a providential cause and that this case should not proceed further at this time, and, therefore, at this time, before any further examination of witnesses, or any further action in this case, this Court hereby declares a mistrial in this case.

This the 24th day of October, 1963.

/s/ Luther Alverson
JUDGE, S.C.A.J.C.

TATE, Circuit Judge, with whom ALVIN B. RUBIN and KRAVITCH, Circuit Judges, join, concurring:

In 1978, the petitioner Cherry sought federal habeas review of a 1963 state conviction. In my opinion, our original panel opinion, 613 F.2d 1262, correctly held that the state trial judge's sua sponte grant of a mistrial was violative of standards applica-

ble to the grant of a mistrial for "manifest necessity", as enunciated in 1971 by *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543. Nevertheless, I concur in the majority's result, which denies habeas relief, because I do not believe that *Jorn* retroactively applies to the 1963 mistrial so as, in the face of a silent record, to require an evidentiary hearing.

My chief reservations as to the majority's articulation are (a) that, in terms, it does not restrict its justification of the mistrial to those that occurred pre–*Jorn*, nor (b) does it in terms restrict its standard of double-jeopardy review of sua sponte mistrials to those collaterally attacked by post–conviction petition.[1]

## I

The petitioner Cherry was convicted of robbery in 1963. The conviction resulted after a second trial, the trial judge having declared a mistrial after the first day of the first trial. The basis of the trial judge's declaration of a mistrial was the death of a juror's mother. On the morning of the trial's second day, the judge dismissed the juror from the trial because it would have been inhumane and inappropriate to require that juror to be present in court that morning. Under the record before us, the judge did so ex parte and without giving counsel for the defendant an opportunity to suggest an alternative to mistrial, such as a recess for the day.

Given the circumstance that the trial occurred in 1963, the trial judge's ex parte grant of a mistrial for such reason, without consulting the defendant's counsel, was in accord with the usual practice, *Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), before the decision of our Supreme Court in *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). There, however, the nation's highest tribunal in enunciating Fifth Amendment rights of an individual not "to be twice put in jeopardy of life and limb",

---

1. As to the latter (or (b) objection), I do not read *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), where habeas review of a state conviction was involved, as modifying *Jorn* requirements were this matter before us on direct appeal.

pointed out that the Perez doctrine permitting declaration of a mistrial because of manifest necessity

> stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion [is made].

400 U.S. at 485, 91 S.Ct. at 557. The court emphasized an accused's " 'valued right to have his trial completed by a particular tribunal' ", and continued

> If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad–faith conduct by judge of prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial.

*Id.*

Had the present ex parte grant of mistrial happened after *Jorn*, in my opinion, it would constitute an unquestionable violation of the accused's double jeopardy rights as articulated by *Jorn*. That decision qualified the former view (see *Gori, supra*) that a constitutional issue arose as to the exercise of the broad discretion only if there was an abuse in the exercise of that discretion. Unless restricted to the present factual context, the majority's methodology of review (as to whether a sua sponte declaration of mistrial offends the accused's double jeopardy rights) in effect reinstates *Gori* and disregards *Jorn*.

As I read *Jorn*, before a defendant may be deprived of his constitutional right under the double jeopardy clause to have his trial completed by the particular tribunal first seated, the district judge must take into consideration the defendant's significant interests by affording him an opportunity to suggest consideration of consequences less severe to him than a mistrial. Only where, *after* that, "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings", *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557, should the trial court foreclose the defendant's option to have the trial completed before the tribunal first chosen.

In *United States v. Starling*, 571 F.2d 934 (5th Cir. 1978), after exhaustive and scholarly analysis of the double jeopardy–"manifest necessity" mistrial issue, this circuit adhered to the interpretation above expressed. There, on appeal from a conviction on second trial following a mistrial on the first, the second trial and conviction was reversed, as offending Fifth Amendment double jeopardy principles. We there noted the reviewing court's obligation to satisfy itself that sound discretion was exercised in accord with constitutional principles and, in reversing, did so because

> [a]ppellant's trial was terminated and the jury dismissed after only a brief and confusing exchange between the court and jury. The court did not give counsel for either side an opportunity to address the possibility of bias or the need for a mistrial. No alternatives to a mistrial were considered. Indeed, "had . . . the defendant [been disposed] to object to the discharge of the jury, there would have been no opportunity to do so." *United States v. Jorn*, 400 U.S. at 487, 91 S.Ct. at 558. The record reflects a total lack of awareness of the double–jeopardy consequences of the court's action and of the manifest necessity standard. Moreover, it shows a crucial failure to consider the appellant's protected interest in having the trial concluded in a single proceeding. Under these circumstances, the very basis for appellate deference to the court's determination that a mistrial was required is diminished beyond the point of significance. See *Arizona v. Washington*, 435 U.S. [497] at 510 and n. 28, 98 S.Ct. 824 [at 832, 54 L.Ed.2d 717].

571 F.2d 941.

I assume the majority's opinion is not intended to modify *Starling's* interpretation of the controlling Supreme Court jurisprudence, because this leading circuit authority on the issue is not cited in its opinion.[2]

---

2. *Grooms v. Wainwright*, 610 F.2d 344 (5th Cir. 1980), a federal habeas attack upon a state

conviction, is not authority to the contrary; in fact, it cites *Starling* with approval. In

Further, six other circuits have likewise recently held that, in evaluating manifest necessity, a judge must give the defendant an opportunity to object and must explore all feasible alternatives before declaring a mistrial, otherwise a second trial violates the double jeopardy provisions of the Fifth Amendment. *Harris v. Young*, 607 F.2d 1081 (4th Cir. 1979); *U. S. v. Pierce*, 593 F.2d 415 (1st Cir. 1979); *U. S. v. Sanders*, 591 F.2d 1293 (9th Cir. 1979); *U. S. v. McKoy*, 591 F.2d 218 (3d Cir. 1979); *U. S. v. Horn*, 583 F.2d 1124 (10th Cir. 1978); *Dunkerley v. Hogan*, 579 F.2d 141 (2d Cir. 1978). If the majority's rationale is expanded beyond application to the present factual context alone before us, it is in conflict not only with the *Jorn* interpretations of these other six circuits, as well as with what until now has been regarded as our own controlling Fifth Circuit precedent in *Starling*.

## II

My difficulty with the majority opinion is that its language (viewed outside of its limited factual context) seems to justify a sua sponte declaration of mistrial by a trial judge under present circumstances, not only in the present pre–*Jorn* 1963 trial, but also in post–*Jorn* trials, including those conducted after we hand down this opinion. Here, because we determine the trial judge *might* reasonably have dismissed the juror and have therefore declared a mistrial, we conclude that the defendant's constitutional protection against double jeopardy was not offended—even though the record does not show that the trial court seriously considered alternatives to a mistrial (other than attempting to secure the defendant's consent to continuance of the trial before eleven jurors), or that he articulated reasons for foregoing these alternatives; and

even though (so far as the record shows) defense counsel did not have an opportunity to object to the mistrial before it was granted, or to suggest alternatives.

With respect, I think the majority paints too broadly. As articulated, its rationale is contrary to *Jorn*, if applied outside of the present factual context. If applied as the criteria for constitutional violation in mistrials for manifest necessity granted in the present day, the majority's rationale has effectively eroded the *Jorn*–mandated requirement that the defendant's interest be consulted before the trial judge declares a mistrial because of an alleged manifest necessity to do so.

I do not read *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), as exempting from habeas review for double jeopardy violation all mistrials where the record shows formal concern and consideration by the district judge, and a supportable reason for his granting a mistrial, unless he act "irrationally and irresponsibly", 434 U.S. at 515, 98 S.Ct. at 835. The decision on its face does not question *Jorn*, which it reaffirms; indeed, the Court found that the record evidenced careful consideration of the accused's contrary arguments and the exercise of sound discretion by the trial judge in handling a sensitive problem of possible juror bias, a matter peculiarly addressed to his ability to evaluate the prejudicial impact created by improper counsel comment. It held that, therefore, the mistrial order was supported by the "high degree" of necessity that is required in a case of this kind. 434 U.S. at 516, 98 S.Ct. at 835.

The holding that no *Jorn* mistrial violation occurred under *its* facts in *Arizona v. Washington* is not dispositive of the *present*

---

*Grooms*, while the jury was deliberating, a bailiff had permitted his pistol to be examined by ·the jury in the jury room. The judge, after deliberating, declared a mistrial on the first trial because "the make, shape, and size of the pistol were a very critical part of the testimony presented at trial," 610 F.2d at 345. As in *Arizona v. Washington, supra cit.* note 1, the ineradicably prejudicial effect on the entire trial

jury (a matter peculiarly within the trial judge's ability to evaluate) admitted of no reasonable alternatives to a "manifest necessity" mistrial; therefore, the circumstance that the district court did not expressly for the record canvass alternatives did not, for purposes of federal habeas review, require the state conviction to be set aside on federal habeas review, where all the *Jorn* requirements were otherwise met.

issue of whether a sua sponte declaration of a mistrial, without consulting the interests of the defendant or exploring reasonable alternatives, offends double–jeopardy rights as enunciated by *Jorn.*

The majority may well not have intended its articulation and holding to extend beyond the present facts of a post–*Jorn* federal habeas attack upon a pre–*Jorn* state conviction. If so, I can live with the opinion as articulated. Nevertheless, the broad language of the majority opinion may later be urged as applying to decision of double-jeopardy mistrial issues beyond the scope of the narrow issue before us. The writer must therefore respectfully note these reservations to the majority's articulation of its rationale.