953 F.2d 1388
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Nelson L. THOMAS, Petitioner-Appellant,
v.
Eddie YLST, Warden; Attorney General of the State of
California, Respondents-Appellees.
 No. 90-56240.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 9, 1992.*
Decided Feb. 4, 1992.
 
 Before FARRIS, NOONAN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Nelson L. Thomas appeals from the district court's denial of his petition for habeas corpus. We affirm.
 
 I. The Facts
 
 3
 On March 28, 1981, Thomas consumed amphetamines and barbiturates. He drove with a friend to a housing project. Angry that a television had been stolen from him earlier in the evening, Thomas got out of the car, opened and closed the car's trunk lid (perhaps extracting something from the trunk), and left. A short while later, a man matching Thomas' description attempted to rob a pedestrian, Freddie Smith, at gunpoint. Smith testified that the robber told him to "Give me your money," while another witness, Harvey Thornsburg, testified that the robber said, "Give me my money back." After a bystander remonstrated with him, the robber fatally shot the bystander with a shotgun. When he returned to the car, Thomas told his friend that he had asked some people for money. After one of them had made a "smart remark," Thomas said, he had "downed" the person, who had "crumpled to the ground."
 
 
 4
 Thomas pled not guilty to first-degree murder. After a trial, eleven jurors voted for second-degree murder. The twelfth juror refused to vote for religious reasons. Although there were alternate jurors, the court declared a mistrial. The evidence in the retrial resembled that in the first trial, with two differences important here. First, Harvey Thornsburg did not testify; in the first trial he had testified as to his understanding of the robber's demand. Second, a psychiatrist, who had first been contacted the second day of the retrial, testified for the defense. The new jury convicted Thomas of first-degree murder. The California Court of Appeal affirmed, and Thomas did not appeal to the California Supreme Court for health reasons. He subsequently filed a habeas corpus petition in the California Supreme Court, which denied the petition on the procedural ground of failure to set forth sufficiently specific facts.
 
 
 5
 The federal district court denied Nelson's petition for habeas corpus on July 31, 1990, and denied his motion for reconsideration on August 9, 1990. On September 13, 1990, he submitted to prison authorities a notice of appeal to this court.
 
 II. Analysis
 
 6
 A. Jurisdiction.
 
 
 7
 This court issued a certificate of probable cause to appeal on November 16, 1990. We remanded for the limited purpose of determining whether the notice of appeal was timely filed. The district court determined that it was. The prison mail room lost the first notice of appeal, which Thomas had delivered on August 28, 1990, within the time for appeal. The duplicate that he delivered to the mail room on September 13, after the time for appeal had passed, was the one actually submitted to the courts. This submission sufficed. Fed.R.App.Proc. 4(a) only requires an inmate to deliver the notice of appeal to the mail room before the time for appeal has run. Houston v. Lack, 487 U.S. 266, 270-71 (1988). By delivering his original notice on time and promptly submitting a duplicate when he discovered the original might have been lost, Thomas did all that Rule 4(a) required of him. He cannot be blamed for the authorities' loss of his notice. The notice was timely filed and we have jurisdiction under 28 U.S.C. § 2253.
 
 
 8
 B. Exhaustion.
 
 
 9
 Thomas' ineffective-assistance claim and several others are arguably unexhausted. His double jeopardy claim and several others are clearly unexhausted. The state, however, does not raise exhaustion. Neither side has briefed the issue. The merits run clearly against Thomas. We therefore exercise our discretion to proceed to the merits. See Granberry v. Greer, 481 U.S. 129, 134-36 (1987).
 
 
 10
 C. Double Jeopardy.
 
 
 11
 Thomas argues that the state court erred in declaring a mistrial in his first trial without consulting him. The mistrial stemmed from one juror's refusal to vote; Thomas contends that the court should have seated one of the alternates and should in any event have consulted the parties before declaring a mistrial. The vote at that time was 11-0 in favor of second-degree murder, and a twelfth vote would have convicted him of second-degree murder. In the second trial, Thomas was convicted of first-degree murder.
 
 
 12
 When a trial judge declares a mistrial in the absence of "manifest necessity," the Fifth Amendment's Double Jeopardy Clause bars retrial. Arizona v. Washington, 434 U.S. 497, 505 (1978). Nevertheless, the word "necessity" is not to be taken literally. Id. at 506. The decision to declare a mistrial is committed to the trial court's discretion. Id. at 514. Here, the trial judge discovered that the twelfth juror refused to vote only after deliberations had progressed far enough for an 11-0 consensus to have formed. If Thomas were correct, the Double Jeopardy Clause required the judge to substitute an alternate at this late date, contravening the " 'national consensus of bench and bar' that the substitution of alternates after deliberations have commenced should not be permitted." Hameed v. Jones, 750 F.2d 154, 161 (2d Cir.1984) (quoting United States v. Viserto, 596 F.2d 531, 540 (2d Cir.1979)), cert. denied, 471 U.S. 1136 (1985). An alternate who enters the jury room after deliberations have begun has not obtained the benefit of the previous discussion, and that discussion can never be fully reconstructed. The Federal Rules of Criminal Procedure, while not binding on the states, reflect this concern by forbidding the substitution of alternates once deliberations have begun. Fed.R.Crim.Proc. 24(c). Certainly the trial court did not abuse its discretion by following the same reasoning. Failure to consult Thomas' attorney before declaring a mistrial did not convert this reasonable decision into a constitutional violation.
 
 
 13
 Thomas' petition may also be construed as arguing that the judge should have accepted an eleven-person verdict rather than declaring a mistrial. Thomas, however, had no constitutional right to an eleven-person verdict and there is no indication the government would have accepted one. Failure to explore an available but unlikely alternative did not by itself violate the Double Jeopardy Clause. Cherry v. Director, State Board of Corrections, 635 F.2d 414, 418-19 (5th Cir.1981).
 
 
 14
 D. Ineffective assistance of counsel.
 
 
 15
 Thomas argues that his counsel was ineffective in three different ways. His lawyers failed to investigate the defense of diminished capacity due to his drug use, failed to call a key witness, and failed to object at trial or on appeal to the court's declaration of a mistrial. We review de novo whether Thomas received effective assistance of counsel. Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir.1986). We accept the trial court's findings of fact related to the ineffective-assistance claim unless they are clearly erroneous. See United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986).
 
 
 16
 To succeed, Thomas must show that his counsel was deficient--that the lawyer made errors so serious that Thomas did not have the "counsel" guaranteed by the Sixth Amendment. He must also show that the deficiency prejudiced his defense, depriving him of a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 687 (1984). We must examine the decisions based on the information available at the time of the decision and rule for Thomas only if we overcome a strong presumption that any decision is reasonable. Id. at 689.
 
 
 17
 As to the failure to investigate diminished capacity, the magistrate found that Thomas' counsel made reasonable decisions. A psychiatrist appointed before the first trial helped the attorney explore Thomas' mental state. At the second trial, the attorney presented a different psychiatrist, who testified that Thomas' use of drugs shortly before the killing had impaired his mental state. The attorney obtained three jury instructions on diminished capacity. He did not argue that Thomas had psychosis from long-term PCP use, as Thomas claims he should have, but the psychiatrist found no evidence to support such an argument.
 
 
 18
 Neither was the psychiatrist's performance inadequate. Although the psychiatrist spent only four hours preparing to testify, Thomas does not argue that the shortness of preparation prevented him from understanding Thomas' case. Thomas argues only that the jury would more likely have believed him if he had spent more time preparing. The jury, however, heard a competent psychiatrist explain in comprehensible terms why Thomas' capacity was diminished. He did not give a boilerplate conclusion but explained how the impairment occurred on the specific facts of the case. In sum, the attorney competently presented the facts and law of diminished capacity to the jury. His counsel was adequate.
 
 
 19
 Thomas also argues that his attorney should have called witness Thornsburg, who would have testified that Thomas had said, "Give me my money back" rather than "Give me your money," as another witness stated. This testimony might have negated the evidence that Thomas was committing robbery and hence avoided felony murder. As the magistrate found, however, this testimony would also have tended to show that Thomas killed the victim in retaliation for a previous theft. It would have shown that Thomas simply turned around and shot the victim in cold blood after the victim talked back to him. Such a shooting would itself have been first-degree murder. Thornsburg may have been intoxicated at the time of the murder. The decision not to call the witness was reasonable.
 
 
 20
 Finally, Thomas cites as ineffective assistance his attorney's failure to raise the foregoing arguments on appeal. The arguments were not winners. Since failing to raise losing arguments did not prejudice Thomas, he did not receive ineffective assistance. Strickland, 466 U.S. at 687.
 
 
 21
 The denial of a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3